Lawrence WELKER, Employee, (Plaintiff) Respondent,

v.

MFA CENTRAL CO-OPERATIVE, Employer and MFA Mutual Insurance Company, Insurer, (Defendants) Appellants.

No. 31477.

St. Louis Court of Appeals.

Missouri.

June 15, 1964.

Roberts & Roberts, Farmington, J. Richard Roberts, Hillsboro, for appellants.

Spradling, Bradshaw & McHaney, John P. Bradshaw, Cape Girardeau, for respondent.

ANDERSON, Judge.

This is a workmen's compensation proceeding filed by Lawrence Welker against his employer, MFA Central Co-Operative

of Perryville, Missouri, and its insurance carrier, MFA Mutual Insurance Company. The Referee found that said employee sustained an accident, but that the disability for which claim was made was not caused by said accident. On review the Industrial Commission, one member dissenting, reversed the Referee. The total amount of the award was $3,771.97. On appeal the Circuit Court sustained the Commission's award. The employer and insurer appealed to this court.

It is alleged in the claim that the date of the accident was October 3, 1959; that the place where it occurred was Kasten's farm near Uniontown, Missouri; that claimant suffered injury to his back and body as a whole; and that the exact nature of the injury was a ruptured intervertebral disc. It was also alleged that, "I was unloading 120 lb. sacks of seed wheat, and I was lifting them back over a row of fertilizer sacks on the truck and my foot slipped back as I picked one up, and I landed on my stomach kind of draped over the row of fertilizer sacks with my head toward the front of the truck and my feet toward the tail. Pain hit me when I fell on the fertilizer sacks and got so bad by the end of the day that I went to the doctor the following Monday."

The answer of the employer and insurer was a general denial.

The sole point raised on this appeal is that the court erred in affirming the award of the Industrial Commission because there was no sufficient, competent evidence to support the award, for the reason that there was a failure to prove a causal connection between the accident and claimant's injury.

Claimant was employed by MFA Central Co-Operative during the year 1959 as a truck driver. His duties were to deliver feed and other supplies. A part of his duties was to load and unload the truck he was assigned to drive.

On October 3, 1959, claimant made a delivery of feed to the Kasten farm, which is located about a mile and a half west of Uniontown. When he arrived at the Kasten farm he backed the truck to the granary to unload the order. In attempting to do so, it was necessary for him to reach over a row of fertilizer sacks in the back end of the truck in order to get the sack of feed. Claimant picked up the sack of feed with both hands, and as he started to lift it, became overbalanced and slipped. He immediately felt pain in his back. Mr. Kasten then assisted claimant in unloading the feed. Thereafter he drove to the farm of Mr. Lueders to deliver the sacks of fertilizer. These were unloaded by Mr. Lueders. Claimant then returned to Perryville, put the truck in a shed and went home. He stated that he "laid around" the next day, which was Sunday. On Monday, October 5, 1959, he told Mr. Kephardt, the manager under whom he worked, about the incident, and then consulted Dr. Stanley G. Legner, a physician at Perryville. Claimant testified that he told Dr. Legner he had strained or hurt his back in some way; that Dr. Legner examined him, gave him some pills, and told him to go home and "take it easy." Claimant was off work for about a week and a half. When he returned to work he had a helper to assist him to load and unload his truck.

On November 5, 1959, claimant drove his truck to the farm of Leroy Wills to make a delivery. He took hold of a sack of feed which was in the front end of the truck and pulled it to the rear. He then turned around to set it upright, at which time he experienced a severe pain in his back. On this occasion there was no slip or unusual movement of claimant's body, except to bring his left hand around to help raise the sack. Mr. Wills and Mr. Schisler removed claimant from the truck and drove him to the MFA office in Perryville. They carried him from the truck to the office, and then to Dr. Legner's office. Dr. Legner gave him a "shot" to relieve his pain, then sent him to the Perry County Memorial Hospital, where he remained under the care of Dr. Legner for one week. There-

after he was taken to the St. Francis Hospital in Cape Girardeau, where he was under the care of Dr. Thomas G. Otto, an orthopedic surgeon. Claimant remained in St. Francis Hospital twenty-two days. He was thereafter treated by Dr. Otto in his office until about the middle of April. On May 1, 1960, claimant went to work for a Mr. Fassold, where he was employed at the date of the hearing before the Referee.

Claimant testified that as far as he knew, his back was in good shape prior to October 3, 1959, but since that date he was unable to do the type of work he had been doing. He stated that on some days he would get along good, but on others, perhaps a day or two a week, his back would bother him to such an extent he could not sit still in the driver's seat. The pain is in the lower part of his back. At the hearing he indicated a spot from one to three inches below the belt in the midsection of his back as the area where the pain strikes. After leaving the hospital claimant wore a corset, which Dr. Otto told him to wear. He wore this corset steadily until about two or three weeks before he started to work for Mr. Fassold. After that he only wore it once in a while when he would arise in the morning with a feeling that his back was going to bother him. Claimant testified that he did no heavy lifting on his present job, only light lifting. Mr. Fassold's grandson does the heavy lifting for him. On one occasion claimant tried lifting a few sacks, but was unable to rest that night.

Dr. Stanley G. Legner was called as a witness by the employer and insurer. He testified that he had occasion to treat claimant on October 5, 1959. He stated that claimant was at the time complaining of low back pain and pain in both groins. The doctor further stated that claimant gave a history of having prostate trouble some five years prior; that Dr. Grayson took care of him at the time, and that his complaints then were about the same as those he had on October 5th, i. e., low back pain and pain in the groin. Dr. Legner examined claimant's prostate and found it normal. He also made a urinalysis and found a mild cystitis, which meant that claimant perhaps had a mild infection of the bladder. He did not think a virus would cause back pain, but prostate trouble could. He testified that from his examination he established to his own satisfaction that his low back pain was not due to prostate trouble.

Dr. Legner further testified he had no record or recollection of claimant giving him a history of any traumatic incident preceding his visit of October 5th. The doctor again saw him on October 8th. The doctor stated that on that visit the urinalysis was negative, but claimant still complained of back pain. The doctor did not explore the cause of this pain. He stated he had no note in his record of prescribing bed rest, but in such cases he recommends limited activity, which he was sure he did in claimant's case. The doctor took no X-rays at the time. The doctor had no recollection of setting a date for a return visit subsequent to October 8th.

Dr. Legner further testified that claimant was carried into his office by two men on November 5th, 1959. Claimant was unable to bend over. He complained of sudden pain in his back, which radiated down the left side of his back and down his left leg, stating that this occurred acutely while he was moving some feed bags. Dr. Legner further stated that the pain complained of on November 5th was different from the pain suffered in October, in that the pain in October was localized in the sacral area, while the pain in November went down the left leg to the foot. The doctor gave claimant a "shot" and sent him to the hospital, where he treated him until November 15, 1959, at which time he was transferred to St. Francis Hospital in Cape Girardeau, and placed under the care of Dr. Thomas G. Otto. Dr. Legner performed a myelogram and took X-rays in connection therewith. These showed suspicious evidence of a herniated disc at the

fourth and fifth lumbar level, and Dr. Legner so diagnosed the claimant's condition. The doctor testified that in his diagnosis he did not connect the complaints of October 5th with those of November 5th. Dr. Legner gave the following testimony:

"Q. Now when Mr. Welker was brought into your office in November did you then consider the question of any connection between this and the October episode for which he had been in?

"A. No, sir, because this was an acute onset and the pain was different from what he complained of in October. He complained only of pain in the sacral area or what we refer to as low back pain without any specific radiation in any area.

"Q. There was still low back pain on the second episode in November, was there not?

"A. When he came in on the 5th of November?

"Q. Yes, sir. A. He had an acute pain starting in his back but this pain was radiating to the left leg and left hip. * * *

"Q. Was it the same area of the back he complained of previously, same part of the back?

"A. It started in the same area but it was on one side. It was a left sided pain whereas before it was just a general pain across his back. It was not a severe pain but an aching pain across his back. In other words, it covered the whole low back area."

Dr. Legner further testified that there was nothing in the history or the examination in October which indicated a disc involvement or ruptured disc. He stated:

"* * * on that occasion I didn't feel that there was any disc symptoms present at that time because the pain was strictly a local pain to the lumbar sacral area. There was no evidence of pain on raising the leg, stooping, bending and coughing, which would indicate typical disc pain, shooting pain, due to physical signs."

Dr. Legner further testified that, based on the history given and his examination of claimant, he concluded that claimant had a ruptured disc on November 5th, and that the onset of the pain present on that occasion had been almost immediately before he saw claimant. The doctor was then asked if there were different degrees of disc involvement. In answer to the question he stated: "Yes, it depends on the severity of the herniation, of the herniation itself, how severe it is, and also whether it is a long standing thing or whether it is an acute thing and how the symptoms will affect a person." There then appears in the transcript the following question put to the doctor: "Q. Doctor, is it possible that the complaint made by the patient to you on October 5th, the first visit to you, could have been the result of a mild herniation in this same area?" The doctor answered by saying it was possible, but that the complaint made by claimant on October 5th did not impress him as being the type of pain associated with a herniated disc.

Claimant offered in evidence the deposition of Dr. Thomas G. Otto, who had treated claimant at the St. Francis Hospital in Cape Girardeau. Dr. Otto was an orthopedic surgeon. He first saw claimant on November 15, 1959. At that time claimant gave a history of having pain in his lower back region, which began about October 7, 1959. This pain was centered in the lumbar sacral region. At the time of the onset he was driving a truck hauling feed. He was unloading feed. The doctor further stated that claimant told him there was no particular fall or twist, but the pain just developed while he was doing this work. Further reciting the history, Dr. Otto stated:

"He was seen by his family physician in Perryville, the place of his residence,

who was Dr. Stanley Legner. Dr. Legner treated him on what would be described as a conservative basis or by medical management and after several days of rest he was able to return to work. He returned to work and was working with a helper at delivery, and the second day after he returned to work he developed acute pain in the low back region with radiation of the pain into the left leg. This was on November 4, 1959. The pain was so severe that it was necessary for him to be admitted to the hospital at Perryville, Missouri, and he had been in the hospital at Perryville, Missouri, from November 5, 1959 to November 15, 1959, at which time I was consulted by Dr. Legner and the patient was transferred to St. Francis Hospital."

The doctor was confused as to the dates of the two episodes involved, referring to the first as occurring on October 1st, instead of October 3rd, and the second as occurring on November 4th instead of November 5th.

Dr. Otto further testified that he made a diagnosis of herniated disc. This diagnosis was not based on the myelogram and X-rays performed and taken at the Perryville Hospital, which he said did not show positive evidence of a herniated disc but, on the usual tests given, straight leg raising together with the man's reaction to those tests and the localization of pain, a combination of objective and subjective symptoms.

Dr. Otto last saw claimant on January 31, 1961, at which time the doctor considered that the patient had responded to conservative treatment, and that his condition was stable without aggravation for a period of time dating from May 19, 1960, to January 31, 1961. By "stable" the doctor meant that the patient had improved to the extent that he was able to do some of his work without aggravation of pain to the severe degree he had at the onset of his condition.

Dr. Otto further testified that it is possible for one to have a herniated disc without a fall or twist, and that claimant's condition could have occurred in the manner related in his history. The following question and answer appear in the transcript: "Q. Dr. could the episode that occurred on October 1, 1959 have been the initial causal factor in this condition in his back? A. Yes."

A question was then put to the witness which, after assuming the facts brought out in the evidence with respect to the alleged accident of October 3, 1959, contained the following inquiry:

" * * * Could you then with any degree of reasonable medical certainty state that it is probable that this episode on October 1, 1959 caused the herniation? * * * A. Yes.

"Q. What is your opinion on that, Dr.? A. I think it could have.

* * * * * *

"Q. Now Dr. if the patient had undergone an episode on October 1, 1959 as hypothesized here in hypothetical question as corrected, then returned to work within a period of time between October 1, and November 4, 1959, could he spontaneously on November 4, 1959, have developed the pain in the low back radiating into his left leg? A. Yes.

"Q. Did he in his history of the second episode recite whether or not this pain was radiated into his left leg, just came about or did he give you any indication of anything that might have caused it?

"A. No, he did not, it just came about while he was working."

Appellants' assignment of error on this appeal is that the trial court erred in affirming the award of the Commission for the reason there was not sufficient competent evidence in the record to warrant said award. In support of this contention it is urged that the evidence fails to establish

a causal connection between the accident of October 3rd and the condition which developed on November 5th for which compensation was awarded.

Appellant does not challenge the Commission's finding that on October 3, 1959, claimant sustained an accident arising out of and in the course of his employment. Claimant testified that he slipped while unloading a sack of feed at the Kasten farm. It is conceded that this testimony was sufficient evidence, if believed, to carry the burden of proof of accident which under the law rested upon claimant, although there was testimony by both doctors that claimant gave to them no history of traumatic incident having occurred on October 3rd. It is also important to note that claimant does not maintain there was an accident on November 5th when he suddenly suffered the pain which the doctors diagnosed as having been caused by a herniated disc. His entire claim for compensation is based on the accident of October 3rd, as is the Commission's award.

 Dr. Legner testified he did not consider there was any connection between the complaints of October 3rd and the condition he diagnosed as a herniated disc on November 5th. He gave as his reasons the fact that the October pain in the lumbar sacral area was strictly local without radiation, while the pain experienced cn November 5th was on one side of the back and radiated down the left hip and left leg. In October there was also absent evidence of pain on leg raising, stooping, bending and coughing which symptoms would be present if there was a disc involvement. His opinion was that the onset of the pain experienced by claimant had its onset immediately before he saw claimant on that occasion. When asked if it was possible that the complaint made by claimant on his first visit could have been the result of a mild herniation, the doctor answered that it was possible, but it did not impress him as being associated with a herniated disc. This testimony was not sufficient to estab-

lish a causal connection between the accident which occurred in October and the herniated disc which the doctors diagnosed as being present in November. Expert evidence that it is possible that an act could have caused a certain result is admissible as an assurance that such result was scientifically possible, but is not, standing alone, substantial evidence that the act did cause such result. O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644; Wack v. F. E. Schoenberg Mfg. Co., 331 Mo. 197, 53 S.W.2d 28.

 Claimant contends that the answers given by Dr. Otto to the hypothetical question, heretofore mentioned, established that it was probable the accident caused the herniated disc, and, therefore, showed the necessary causal connection between the accident and injury. However, a consideration of these answers, and the entire testimony of the witness, does not reveal an opinion of probability but rather one of possibility. His final answer was, "I think it could have." This is not sufficient to establish causal connection under the above mentioned authorities. But even construing his answers as expressing an opinion that it was probable that the October episode caused the herniated disc which manifested itself on November 5th, causal connection is not established. For such an answer does not amount to testimony so conclusive as to authorize a finding that the herniated disc was caused by the accident. It indicates uncertainty, and would leave a finding on the issue to speculation and conjecture. The word "probable" has been defined many times as appearing to be founded in reason and experience which inclines the mind to believe, but leaves room for doubt. See Black's Law Dictionary, (3rd Ed.) and Vol. 34, Words and Phrases.

 Claimant also contends that causal connection need not be shown by expert testimony, but in this case may be inferred from the facts testified to by claimant and

the lay witnesses. He does not point out the testimony which he considers sufficient in this respect. We cannot agree with claimant. In this case we do not have a situation where the herniated disc occurred at the time of the accident or immediately following it. There was a month elapsed between the two events, and during that interval there was absent the classic symptoms of a herniated disc, extreme pain in the back which radiated into the hip and leg. Claimant went back to work after being off a week and a half, and was not in great pain as a result of the accident. Dr. Legner described it as an aching pain across the back. Dr. Otto testified that the herniated disc could have occurred without a twist or fall. Claimant at the time he suffered the severe pain on November 5th was engaged in unloading a sack of feed. He had pulled the sack to the rear of the truck when the pain struck him. Under the circumstances no layman could know or have any reasonable basis for an inference that the herniated disc was the result of the accident. We think the question of causation was one for medical testimony, without which a finding for claimant would be based on mere conjecture and speculation and not on substantial evidence. Gulley v. Spinnichia, Mo.App., 341 S.W.2d 301.

Since claimant introduced the deposition of Dr. Otto who testified that the herniated disc could have occurred without a twist or fall, and since claimant testified that just before he suffered the severe pain on November 5th he had pushed a sack of feed to the rear of the truck, the most that can be said in claimant's behalf is that he has shown the injury to have resulted from one or the other of two causes, for one of which, and not the other, appellant is liable. In such a case claimant has not met the burden of proof which the law casts upon him. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, l. c. 62. Claimant's argument that under § 287.800 RSMo 1959, V.A.M.S., all doubts must be resolved in favor of the employee does not

extend to the authorization of a claim lacking some essential element required by law. Ossery v. Burger-Baird Engraving Co., Mo., 256 S.W.2d 805.

On the whole record, we hold that the evidence was insufficient to reasonably show that claimant's injury resulted from the accident which he sustained on October 3, 1959.

The judgment of the Circuit Court is reversed, and the cause is remanded with directions to the court to set aside its judgment and enter a new judgment reversing the Award of the Industrial Commission and to remand the cause to the Industrial Commission with directions to it to enter its Award in favor of the employer.

RUDDY, P. J., and WOLFE, J., concur.