**Charles E. MULLEN, Plaintiff-Appellant,**

v.

**CHEVROLET–KANSAS CITY DIVISION, GENERAL MOTORS CORPORA-TION, Defendant-Respondent.**

No. 24196.

Kansas City Court of Appeals.

Missouri.

June 7, 1965.

Galen Knowlton, Michael J. Drape, Knowlton & Drape, Kansas City, for appellant.

Paul Scott Kelly, Jr., Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, for respondent.

SPERRY, Commissioner.

This appeal is from a judgment reversing an award of $2,286.55 by the Industrial Commission, in favor of Charles E. Mullen, (whom we shall refer to as plaintiff) against Chevrolet, Kansas City Division, General Motors Corporation, (defendant), employer and self insurer.

The award was made by the referee who conducted the hearing on plaintiff's claim, and was affirmed by a majority of the Commission, without dissent. In reviewing a case of this kind the court may not substitute its judgment on the evidence for that of the administrative tribunal. The court should decide only whether such tribunal could have reasonably made its findings and reached its result, upon consideration of all the evidence before it; and it should set aside decisions clearly contrary to the overwhelming weight of the evidence. Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626, 628.

Sec. 287.550 RSMo 1959, V.A.M.S., provides, in part, that all proceedings before the Commission shall be simple, informal, and without regard to technical rules of evidence, and no defect or irregularity therein shall invalidate the same: " * * * [t]he very object and purpose of the entire act is that substantial rights are to be enforced at the sacrifice of procedural rights". Ross v. Joplin Corporation, Mo. App., 229 S.W.2d 303, 309. If two different conclusions may be reached, or inferences may be drawn from claimant's testimony, as to the ultimate fact at issue, each of such conclusions or inferences being consistent with the testimony and each inconsistent with the other, the triers of the facts must determine the issues and draw the inferences; it does not become a question of law. Sanderson v. Producers Commission Association, 360 Mo. 571, 229 S.W.2d 563, 568. The burden is on the claimant to prove causation of the injury and, in some instances, it can be proven only by medical testimony. Welker v. MFA Central Cooperative, Mo.App., 380 S.W.2d 481, 487. It is not sufficient that proof shows that the injury may have been caused by one of two events, for one only of which the employer is liable for compensation. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55, 62.

With the above rules of law in mind we will proceed to state the evidentiary facts shown of record which tend to support the award.

Plaintiff had been an employee of defendant for several months when, on April 16th, 1962, he was helping another employee, working on the opposite side of the production line, to lift back onto the track of the conveyor line, a 65 model truck frame. It had slipped out of place so that it had stopped the line from moving. As he was lifting the frame, which was four feet wide and twenty feet long, weighing from five hundred to one thousand pounds, he stepped on a nut or bolt which rolled under his foot, snapping his back. He slipped and fell forward into the frame, thence to the floor. A fellow worker helped him out

of the way and took his place on the line. After five or ten minutes he was able to move and went to the first aid department *unassisted*, where he received treatment. During the next two weeks he was engaged in putting washers on bolts, doing very light work. He walked with a cane which was furnished by defendant's medical staff. About two weeks later he resumed his former employment and was lifting and pulling another truck back on the line when he felt a sharp pain as though some one had stuck a knife in his "tail", his legs went limber, he could not stand, and he fell to the floor. Some men brought a stretcher and carried him to the first aid department where he was placed in a wheel chair and taken to Menorah Hospital, where he was examined and treated by Dr. Shechter, defendant's physician. X-rays were taken. Dr. Shechter told him that he had suffered no injury, had no disability, and refused to treat him thereafter. He went to see, and was treated by his family physician, Dr. Miller, of Lees Summit, Missouri. He was off work three weeks. Defendant's medical representatives told him that there was *nothing* wrong with him, that he was lazy and they refused to treat him in any way, and continued to so refuse or to pay him any compensation, until the date of the hearing. He did not go back to his original job from the time he went to Menorah Hospital until he was transferred to St. Louis Division of Chevrolet, September 10th, 1962. In November of 1962, he was treated in St. Louis by Dr. Cacioppo, plaintiff's personal physician. He was hospitalized at Faith Hospital, in St. Louis, for one and one half weeks, at his own expense. Plaintiff stated that he had asked defendant for treatment a number of times, both at Kansas City and St. Louis, and that such requests were refused.

Plaintiff was off work from January 8th, 1963, until March 1st, 1963. He was off three weeks while being treated by Dr. Miller. He lost two weeks from work in November 1962. Evidence of medical expense, paid by plaintiff, was shown.

Dr. Vilmer, an Orthopedic Surgeon was appointed by the referee to examine plaintiff, testified for defendant that he found a number of pre-existing congenital abnormalities, existing prior to April 16th, 1962; that among them was a pelvic tilt; lordosis (sway back); the right leg was five eighths of an inch shorter than the left; spina bifida occulta (failure of fusion of the first sacral vertebrae of the spine); and other defects of the low back and spine. He also found muscle spasm. He stated that he found no evidence of injury or disability due to the trauma suffered by plaintiff on April 16th, 1962.

Dr. Shechter saw and examined plaintiff in August 1962, and again on April 5th, 1963. His reports thereon were introduced in evidence. He found no evidence of injury; no muscle spasm, no lordosis; no difference in the length of the legs; no pelvic tilt; no atrophy; x-rays of the spine were negative except for spina bifida occulta.

Dr. Shechter stated that plaintiff complained to him of pain in the low back, aggravated by lifting; needling on lifting and bending; both legs, when he is sitting, go to sleep; and he has severe headaches.

Dr. Shechter stated that, upon his examination on April 27th, 1962, he found nothing to warrant plaintiff's complaints at that time. He stated that plaintiff had no disability; that he had a congenital defect in the low back which is of no significance; that the back was a normal one; that he had some tenderness in the lumbar-sacral region.

Dr. Overesch, a qualified orthopedic surgeon, examined plaintiff August 17th, 1962. He stated that plaintiff complained that his low back had a dull ache all of the time; that, in bending or lifting, his back hurt him more; his legs tingle and go to sleep; he walks with a limp to the right; kidneys are weaker than they were prior to injury, April 16th, 1962; that he did not have such complaints prior to his injury.

Dr. Overesch examined plaintiff on December 29th, 1962. He found muscle spasm. He also reported a pelvic tilt to the right; torsional difficulty of the right knee; an increase in lordosis; the right leg was five eighths of an inch shorter than the left; that, due to pre-existing multiple anomalies in the lumbo-sacral area, including the pelvic tilt and leg shortening, plaintiff has a 15% disability; that, added to this and due to the trauma sustained April 16th, 1962, to his low back, there is an additional permanent disability of the body as a whole, *due to that trauma,* of 10 to 15%. Dr. Overesch examined plaintiff four times and reports of his findings were introduced without objection, and filed as exhibits in connection with his deposition, taken by plaintiff.

From a study of the testimony and reports of medical findings of the three Orthopedists who examined plaintiff and testified herein, Dr. Overesch alone found that plaintiff suffered permanent partial disability of from 10 to 15% *as a result of the injury of April 16th, 1962.* Dr. Shechter found no disability of any kind, not even due to material pre-existing congenital abnormalities. Dr. Vilmer found congenital abnormalities but no evidence of injury or disability due to the occurrence of April 16th, 1962. It was within the province of the Commission to evaluate the medical evidence in this case, and to accept and believe that version which, under all of the facts in evidence, appeared to it to reflect the true situation with respect to plaintiff's disability, if any, and the cause of it. The award indicates acceptance of and reliance upon the testimony and the findings entered in the medical report of Dr. Overesch. The court may not disturb the Commission's findings in this case because they are supported by substantial, competent evidence. It could have reasonably made its findings and reached its result, on the whole record.

The judgment is reversed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.