**R. Lee ANDERSON, Appellant,**

v.

**Claude PARRISH and Western Casualty & Surety Company, Respondents.**

**No. 25540.**

Kansas City Court of Appeals, Missouri.

Oct. 18, 1971.

Max V. Erdmannsdorff, North Kansas City, for appellant.

Leo T. Schwartz, Kansas City, for respondents.

PER CURIAM.

This is a workmen's compensation case. The appellant, R. Lee Anderson, was denied compensation by the Referee. The award was affirmed upon review by the Industrial Commission and also by the Circuit Court. The claimant has appealed to this Court.

Appellant testified that at the time of the accident he was a body shop foreman for respondent, Parrish Chevrolet Company. The day of the accident, March 7, 1967, was a cold day, so cold that respondent's employees were unable to begin painting the automobiles in the body shop. The interior of the shop was heated by three gas furnaces suspended from the ceiling to within four and one-half feet from the floor of the shop. The accident for which appellant seeks compensation occurred while he was attempting to light one of these furnaces. To light this furnace, appellant placed a rag soaked in paint cleaner on a welding rod and placed it into the pilot light opening of the furnace. Four attempts were made to light the furnace in this particular manner. On each of the first four attempts the furnace would appear to function but the flame would subside upon removal of the welding torch. The furnace blew up upon appellant's fifth attempt to light it.

Appellant claimed that the explosion "knocked me in behind another car" and the point where he "came to rest" was "about twelve to eighteen feet" from where he had been standing when "the ball of fire came out of the furnace." Appellant stated that his face, particularly the right side, was burned. Burns extended across his forehead, down the right side of his face, including the skin surrounding his right eye, down the right side of his neck and across the top of his right shoulder. Immediately following the explosion his face was stinging and causing him pain and discomfort, and his right eye was also causing him pain. He testified that his face was not bleeding after the accident.

In appellant's written "Claim for Compensation" in answer to the inquiry "Parts of the body injured" he stated "Lungs and Eyes, eye lash and eyebrows, and face and neck burned." And in answer to the inquiry "Exact nature of any permanent injury" he stated: "Damage to lungs and respiratory system, resulting in shortness of breath—blurring and weakness of vision, by burning of the eyes."

Appellant admits that no damage was done to the sheet metal heater and no damage was done to anything else in the shop. The heater continued in use that day, and the only repair was the installation of a regulator. The extent of his claims of his injury to the employer, up until his claim was filed seven months later, was that his face was singed and his right eye hurt. Appellant continued to work for the employer on the day of the flame-out, and thereafter, without loss of time or impairment of his ability for approximately three months, until he was terminated by the employer. During this period appellant made no complaints of burns of his mouth and throat, difficulty with swallowing, pain in the chest, shortness of breath, failure of physical strength, or inability to do the work he had previously performed. During this period he did not request or suggest to the employer that he be sent to the doctor for examination or treatment, which had previously been voluntarily furnished by the employer. In addition, appellant admitted that since the flame-out of the heater, and up to the time of the hearing he had worked every day for 28 months, doing the same kind and type of work he had previously done.

On the day of the accident, the employer sent appellant to Dr. Glenn Hendren. When he was examined by Dr. Hendren, appellant did not make any complaints to Dr. Hendren about his mouth, throat or lungs. Appellant did not go back to Dr. Hendren for any treatment or further examination. It was approximately seven months later before he consulted any other doctor, and at that time he consulted and was first examined by Dr. Carl Moore, D. O., the family physician. Thereafter, he was examined for the employer on December 19, 1967, by Dr. William Duncan, Industrial Surgeon, and by Dr. Florence MacInnis, specialist in pulmonary diseases, on May 29, 1968. Upon the recommendation of his family physician, Dr. Moore,

appellant went to and was examined by Dr. John Mayer, Jr., Thoracic Surgeon, on November 23, 1968, and again on January 3, 1969. As would be expected, and as appellant testified, the acute condition immediately or shortly after the accident subsided within approximately a month thereafter and before he saw any of the above-named doctors, except Dr. Hendren.

Dr. Mayer's report of his examination of appellant was introduced as part of appellant's case. In the second page of his report Dr. Mayer states that careful questioning of appellant by him on two separate occasions revealed he had no significant respiratory difficulty for three days after the accident, and appellant did not sustain sufficient burns of his mouth and throat to cause his difficulty with swallowing during that period. In discussing the effect of the gas explosion, Dr. Mayer stated it was important to note that for three days following the accident appellant had no significant trouble with swallowing or evidence of severe burns involving his mouth, throat or tracheobronchial tree and that his cough and shortness of breath did not develop until three months thereafter. The report concluded: "I think that the best one could say would be that any type of explosion with burn of the region of the mouth and face could possibly cause some damage to the tracheobronchial tree, but I would not feel that his present degree of disability could possibly be explained solely on this basis. In spite of his negative history, it may be that this man had some chronic bronchitis, perhaps aggravated by his smoking as well, which he continues to do, and that the explosion may have caused some degree of aggravation of the problem".

The evidence showed that for a number of years appellant had worked in garages where he was exposed to fumes from cars. Appellant admitted that he had been a constant smoker of cigarettes since he was sixteen years of age and probably consumed two packages a day. Dr. Moore, Dr. MacInnis and Dr. Mayer, in varying degrees found some pulmonary impairment. Dr. MacInnis and Dr. Mayer testified that the increased bronchovascular markings could have been caused by the inhalation of fumes from cars while working for years as an auto mechanic, or from constant smoking of cigarettes over a period of years. Dr. Moore, who characterized the condition found in the lungs on X-ray examination as fibrosis, stated that exposure to fumes from automobiles while working as a mechanic in a garage or body shop could produce fibrosis of the lungs and that constant smoking of cigarettes could also produce it. In particular, Dr. Moore testified that there was no way to determine from the X-rays how long the fibrosis had existed. The sum total of the foregoing medical testimony was that the pulmonary impairment found by these doctors could have been caused from automobile fumes or constant cigarette smoking, and that it was not possible to state with medical certainty that the pulmonary impairment was caused by or resulted from the accident.

The Referee made, and the Industrial Commission adopted, these findings: "I further find and believe from all the credible evidence that said employee, R. Lee Anderson, failed to prove that the condition complained of was aggravated and/or caused by the accident of March 7, 1967.

"As for employee's own direct testimony and lay witnesses, his health condition was good prior to said accident, and, as such, aggravation of a pre-existing condition did not exist.

"I further find as per Claimant's Exhibit C, report of Dr. John Mayer, said accident did not result in any burning of his mouth and/or throat and that said employee had no difficulty in swallowing for three days following said accident and further did not relate the burning or explosion as the sole cause of his condition at the time of his examination.

" * * * In view of the above findings, compensation, therefore, must be and the same is hereby denied."

At the inception of his skillful argument appellant concedes that: "Missouri Appellate Courts have consistently indicated that an appellate court, reviewing the Industrial Commission's award, must affirm that award and not substitute its judgment for the Industrial Commission, if it is based upon competent and substantial evidence taken from the whole record and is not contrary to the overwhelming weight of the evidence. (citing many cases) In addition Missouri Appellate Courts have repeatedly stated that in reviewing an award made by the Industrial Commission, the reviewing court is to consider the entire record, including all legitimate inferences to be drawn therefrom, in the light most favorable to the Industrial Commission's award." (Again citing many cases)

He then says that being "cognizant of these too well established principles of appellate review of any award by the Industrial Commission" his "basic contention in this appeal is that the Industrial Commission's findings and award were not based upon competent and substantial evidence, and were against the overwhelming weight of the evidence adduced. The crux of appellant's position is that, upon the overwhelming weight of the evidence, it was demonstrated by reason of competent and substantial evidence that the accident aggravated appellant's undiscovered, non-disabling bronchial condition which pre-existed the accident."

His brief then recites: "At the outset appellant candidly states that no mention of an aggravation of a pre-existing, undiscovered, and non-disabling respiratory condition was· made in the claim which he filed before the Missouri Workmen's Compensation Division." His brief then says: "As evident from a consideration of the findings of the Industrial Commission and Referee Kaut the issue of the aggravation of a pre-existing respiratory condition was litigated in the case. * * * The issue of possible aggravation of a pre-existing respiratory condition was considered by Dr. MacInnis when she testified that with

a reasonable degree of medical certainty she did not believe that the accident could have caused the shortness of breath and other respiratory ailments to the extent that appellant subjectively felt that it had caused them. Likewise, the issue of aggravation was inherent in Dr. Duncan's statement that he believed it was very probable that the explosion had caused a diminution of appellant's physical capacity to the extent of which he complained. Thus, the issue of aggravation was considered by the medical witnesses in the case, and was fully litigated therein." We will dispose of the case on that basis. We do this because of the settled rule that: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Biehle v. Frazier, 360 Mo. 1068, 232 S.W.2d 465, 467.

■ Dr. Florence MacInnis, a specialist in pulmonary diseases, testified that on her examination she found moderately increased bronchovascular markings. She described bronchovascular markings as markings in the lungs of the blood vessels and bronchials; that she did not find any evidence of fibrosis or scar tissue of the lungs. She further testified that to make a diagnosis that fire, flames, hot smoke or fumes had caused pulmonary damage or damage to the lungs, there would have to be evidence of areas of ulceration of the lung tissue, bronchial pneumonia and the person would have been ill or hospitalized. She further testified that she did not find any evidence in the X-rays of any injury to the lungs as the result of inhalation of fire and smoke. She stated that from all of the data presented, including history, examination, laboratory data, chest X-rays and pulmonary function tests, it was her considered opinion that appellant suffered no pulmonary impairment attributable to the accident of March 7, 1967 and that the accident did not cause or trigger the decline in his ability to do the physical things which he claimed to do before the accident.

Dr. MacInnis further stated that from her examination, appellant had a permanent partial disability of the body as a whole of 10 to 15 per cent, regardless of the accident. She further testified that the conditions and disability she found could have resulted from appellant's exposure to fumes over the years as an auto mechanic and work in auto body shops, or from smoking cigarettes since he was a child.

Dr. William Duncan, who qualified as an Industrial Surgeon, testified that on physical examination there was no tenderness upon pressure and palpation throughout the chest area; that there was normal inspiration and expiration; that there was no evidence of dyspnea or shortness of breath. He further testified that the clinical and X-ray examination, electrocardiograph and chest films were essentially within normal limits; that appellant had made a satisfactory convalescence from the accident, particularly from any chest or lung injury and without any evidence of permanent disability.

In each of the following cases where there was a conflict, particularly in the medical opinions or medical theories, awards denying compensation were affirmed on the basis that the medical opinions were competent and substantial evidence supporting the awards. Becherer v. Curtiss-Wright Corp., Mo.App., 194 S.W.2d 740; Greer v. Missouri State Highway Department, Mo.App., 362 S.W.2d 773; Mullen v. Chevrolet-Kansas City Division, General Motors Corp., Mo.App., 392 S.W. 2d 27; Decker v. Raymond Concrete Pile Company, 336 Mo. 1116, 82 S.W.2d 267 and Brown v. Boulevard Village, Inc., Mo. App., 422 S.W.2d 389.

We have searched the transcript of testimony and do not find any evidence that the doctors were asked or that any of them testified that, with reasonable medical certainty, the accident had aggravated a pre-existing condition. Dr. Moore, claimant's medical witness, made no reference whatever to aggravation of a pre-existing

condition. His medical theory, obviously rejected by the Industrial Commission, was that the exposure to the fire, hot air or fumes was the direct, and not merely aggravating, cause of claimant's pulmonary infirmities and disability. The opinion of Dr. MacInnis, stated in a positive way, was that appellant suffered no pulmonary impairment attributable to the accident and, to a reasonable medical certainty, the accident could not have triggered the decline in his ability to physically do those things he described he did before the accident. In these opinions, there is the inherent inference that claimant's pulmonary impairment or disability was not aggravated by the accident.

A workmen's compensation claimant has the burden of establishing a causal connection between the accident and injury. Mashburn v. Chevrolet-Kansas City Div., General Motors Corp., Mo.App., 397 S.W. 2d 23, 30 [8]. To warrant a finding of permanent injury, the permanency of the injury must be shown with reasonable certainty. Garrison v. U. S. Cartridge Co., Mo.App., 197 S.W.2d 675, 676 [2]. The evidence of Dr. Mayer given in his report which suggests "it may be that this man had some chronic bronchitis * * * and that the explosion may have caused some degree of aggravation of the problem" was not sufficient to establish either a pre-existing condition or a causal relationship between the accident and a permanently disabling aggravation of such pre-existing condition. Expert evidence that an act may have caused a permanent injury, while admissible as an assurance that such result was scientifically possible, is not standing alone, an expression of reasonable certainty and thus not substantial evidence that the act did cause such injury. Weller v. MFA Central Co-operative, Mo.App., 380 S.W.2d 481, 486 [1, 2]; Bailey v. Kershner, Mo. App., 444 S.W.2d 10, 14 [5, 6]. From the full context of Dr. Mayer's report, it is evident that the portion we have quoted, and which is that evidence upon which appellant specifically relies to support his claim

of proof of aggravation, was not intended as a statement of a medical fact but only as a possible explanation of appellant's symptomology. In any event, even if it could be said that Dr. Mayer's testimony was substantial evidence of aggravation, there was substantial evidence to the contrary to support the Industrial Commission's finding.

This claim of permanent disability from aggravation of an undiscovered non-disabling pre-existing condition is refuted by other evidence. Before the accident, appellant worked as a body shop foreman. After the accident he continued to work as a body shop foreman or service manager. From the hour of the accident up to the time of the hearing, approximately twenty-eight months later, he hadn't lost a day from work. If this undiscovered pre-existing condition was non-disabling before the accident, the twenty-eight months of continuous work without loss of any time is the strongest kind of evidence that the pre-existing condition was not aggravated, and that it is still non-disabling. Both the exposure to fumes from automobiles and heavy cigarette smoking were bound to have their effect. Shortness of breath and coughing is a universal complaint of cigarette smokers. These exposures continued for many years and have continued undiminished since the accident. As a practical matter most individuals over forty years of age, particularly cigarette smokers, experience shortness of breath and fatigue when they engage in fast activities or speedy exercise such as running upstairs, fast dancing or continued bowling without interruption. Appellant has continued to do the same kind of work and has continued to engage in bowling and dancing since the accident.

■ Finally, appellant contends that the circuit court erred in affirming the Industrial Commission's award denying an allowance for medical expenses incurred by him.

At the time of the accident appellant was sent by the employer to Dr. Glenn Hendren, a well qualified doctor at Liberty, who examined and treated appellant for the injuries he complained of at that time. The appellant, therefore, knew that the employer was ready and willing to furnish him medical treatment. Thereafter, and during the three or four months that appellant continued to work for the employer, he did not return to Dr. Glenn Hendren for any treatment; he did not complain of any condition to the employer and he did not ask or request the employer to send him to a doctor for either examination or treatment. In the ensuing three or four months after he was terminated by the employer, and during which he now says his various complaints such as soreness in the chest, shortness of breath, coughing, etc., developed he did not advise the employer thereof or request the employer to send him to a doctor for examination or treatment. Appellant admits that on his own responsibility he went to Dr. Carl Moore, his family physician. There is no evidence that after Dr. Moore's examination appellant ever made any demand or request for medical treatment or that respondents furnish or pay for the medical treatment Dr. Moore undertook to provide. The Act gives the employee the right to employ his own physician at his own expense, and it is only when the employer has notice that the employee needs treatment or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails and neglects to provide needed treatment, that the employer is held liable for the medical treatment procured by the employee. It is so ruled in Kopolow v. Zavodnick, Mo.App., 177 S.W.2d 647, 654; Sams v. Hayes Adhesive Company, Mo. App., 260 S.W.2d 815, 820 and Gonzales v. Johnston Foil Manufacturing Company, Mo.App., 305 S.W.2d 45, 53.

In our opinion there was substantial evidence to support the findings and award of the Commission denying compensation and the judgment of the Circuit Court upholding that award should be affirmed.

It is so ordered.