**Deborah A. BANKS, Claimant–Respondent,**

v.

**SPRINGFIELD PARK CARE CENTER, Employer–Appellant,**

and

**Missouri Nursing Home Insurance Trust, Insurer–Appellant.**

No. 22327.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 14, 1998.

Patrick J. Platter, Daniel, Clampett, Powell & Cunningham, L.L.C., for Appellant.

Michael D. Mayes, Schmidt, Kirby & Sullivan, P.C., Springfield, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

In this worker's compensation case, Springfield Park Care Center ("Employer") appeals the decision of the Labor and Industrial Relations Commission (the "Commission") to award Deborah A. Banks ("Employee") certain medical expenses associated with surgery for a lumbar fusion. The issue is whether Employer or Employee should be responsible for the expense of medical and surgical treatment performed by Dr. Jeffries, an orthopedic surgeon.

The parties agree that Employee, a licensed practical nurse, sustained a low back injury while lifting a patient at Employer's facility on November 1, 1993. She initially received care at the emergency room of Springfield Community Hospital on the date of the injury. She was later seen by an orthopedic surgeon, Dr. McMillin, who noted a slight listhesis at the L4–5 level of the spine with an anterior spondylophyte. Employee was subsequently seen by a physiatrist, Dr. Mauldin, who referred her for an MRI, which showed a slight bulge at L4–5 and L5–S1 and mild degenerative disc changes.

Approximately thirty days after the injury, Employee was seen by Dr. Lennard, another physiatrist, who assumed the role of primary treating physician. His initial treatment of Employee consisted of physical therapy, but he later performed a selective nerve root block on December 21, 1993. On December 28, 1993, Employee reported to Dr. Lennard that she was not feeling better, and she was referred to Dr. Whitlock, a neurosurgeon. Dr. Whitlock hospitalized her for a myelogram and CT scan that revealed mild spinal stenosis at L4–5, which he treated with a caudal block.

On January 20, 1994, Employee returned to Dr. Lennard who prescribed the use of a TENS unit and obtained a nerve conduction study and EMG of the right leg, the results of which were both normal. Dr. Lennard last saw Employee on April 12, 1994, at which time he noted that she was no better and that she continued to have back and hip pain as well as generalized weakness in the right leg. He released her, saying that he did not believe that additional treatment would change her condition, and recommended a permanent lifting restriction of 25 pounds, occasional Tylenol for the next six months, and the use of a TENS unit.

Between April 12, 1994 and December 20, 1994, Employee's physical activities were limited, with the result that she needed help doing such things as cooking and laundry. On December 20, 1994, at the request of her attorney and without advance notice to Employer, Employee went to see Dr. Jeffries. Dr. Jeffries' report of that visit gave a diagnosis of "degenerative disc disease at L4–5 with segmental instability and lateral recessed stenosis" and "pain amplification." The possibility of surgery was apparently discussed during that examination as his report also set out the risks of surgery and stated:

Her decompression would require a fusion due this [sic] instability. I have told her than [sic] I will not proceed with surgery until she is smoke-free. She understands that the indication for surgery is pain relief.

Dr. Jeffries' office note of that visit stated:

Ms. Banks is going to consider her options and call me if she can discontinue her use of tobacco. She will require four units of blood for surgery. I would not do both an anterior and posterior approach due to the technical difficulty from the front.

The next day (December 21, 1994) Employee called the office of Dr. Showers, her personal physician. According to Dr. Showers' office notes the following occurred:

[Employee] called & stated that Dr. Jeffries will do spinal surgery as soon as she gives four pts. of her own blood. She quit smoking today per his orders. He told her that she has bulging of the L3–L5 verte-

brae—the L4 keeps slipping back and forth. The surgery will entail rod, plate +/or fusion. The surgeon will send us report per pt's request.

Employee apparently began giving her own blood in preparation for the surgery, a process that took four weeks. On January 13, 1995, Employee's attorney wrote Employer's counsel, enclosing a copy of Dr. Jeffries' report of December 20, 1994. The letter stated:

> As you can see there is a suggestion for surgery. I understand from [Employee] that the surgery is scheduled in February. We are making a request of your client to authorize this surgery and to provide payment for it. If you intend to do so, please confirm this for me and be in touch with Dr. Jeffries [sic] office to arrange this. If you do not intend to provide this, please notify me of this decision before January 29, 1995. Failure to hear from you by then will be construed as a denial of medical treatment.

Employer's attorney responded in a letter dated January 16, 1995:

> You state in your letter that [Employee] will commence medical treatment, potentially including surgery, if we do not respond to you by January 29, 1995. You are hereby advised that the Employer and Insurer consider your deadline to be arbitrary. You are further advised that the decision of your client to continue medical treatment in Columbia, Missouri under such a deadline shall be considered by the Employer and Insurer to be medical treatment which your client has personally sought, and at her own expense.
>
> The Employer has assumed responsibility for medical treatment in this claim and considers any relinquishment of that responsibility to be a most serious matter. The Employer will review these matters and attempt to assist Ms. Banks with a reasonable medical plan, given all the facts and circumstances. Your deadline, however, is merely a pretext in order that your client may seek the medical treatment she may prefer, conceivably for the sake of litigation.

Employee's attorney responded, stating in pertinent part:

> ... we do need to know if the [E]mployer is going to continue to accept responsibility for the medical treatment or is going to relinquish it. In any event, a sound opinion has been given which indicates treatment is needed and your client is being given the first opportunity to provide it. I will be happy to work with you, but I need to know whether or not your client wishes to provide the treatment which is suggested.

The record does not reflect any additional communication on behalf of Employer. Employee proceeded with the surgery by Dr. Jeffries on February 15, 1995 in Columbia, Missouri, thereby incurring the medical bills which are the subject of this appeal.

The Administrative Law Judge (the "ALJ") who heard Employee's claim concluded that Employer was responsible for the expense of the treatment by Dr. Jeffries. That decision was affirmed by the Commission. Employer now appeals.

■■■■ In reviewing a worker's compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Here, the Commission's award attached and incorporated the ALJ's award and decision. We, therefore, consider the findings and conclusions of the Commission as including the ALJ's award. *Brown v. Treasurer of Missouri*, 795 S.W.2d 479, 482 (Mo.App. E.D. 1990). If there is sufficient competent and substantial evidence to support the award, we then determine if the award is against the overwhelming weight of the evidence. *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). In our review, we are mindful that we may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Id.* The Commission's interpretation and application of the law, however, are not binding on this Court and fall within our realm of independent review and correction. *Id.*

In its sole point on appeal, Employer contends that the Commission erred in awarding medical expenses and temporary disability benefits [1] associated with the surgery performed by Dr. Jeffries "because [Employee] personally selected Dr. Jeffries and therefore assumed the expense of that treatment." It argues that this portion of the award is not supported by substantial evidence and that the Commission acted in excess of its powers in ordering such payment because the only substantial evidence indicated that Employee's attorney referred her to Dr. Jeffries; that Employee decided to undergo the surgery on her first visit to Dr. Jeffries before any notice was given to Employer; that Employee told others the day after she first saw Dr. Jeffries that she was going to have the surgery; and that shortly after seeing Dr. Jeffries, Employee started donating blood in order to have the surgery.

Section 287.140.1 provides, in pertinent part:

In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.

In discussing § 287.140.1, the court in *Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 85 (Mo.App. E.D.1995), said:

The intent of the statute is obvious. An employer is charged with the duty of providing the injured employee with medical care, but the employer is given control over the selection of the medical provider. It is only when the employer fails to do so that the employee is free to pick his own provider and assess those costs against his employer. Therefore, the employer is held liable for medical treatment procured by the employee only when the employer has notice that the employee needs treatment, or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails to provide the needed treatment.

Employer cites *Blackwell* for the proposition that medical services rendered by a physician of the employee's choosing with no notice to the employer are to be at the expense of the employee. In *Blackwell,* the appellate court noted that the employer was not aware of the need for additional medical attention, and that the physician's services were rendered without any notice to the employer or request that the employer provide further medical treatment. 901 S.W.2d at 85. Therein lies the distinction from the instant case, however.

Here, Employee selected and was initially seen by Dr. Jeffries before any notice was provided to the Employer. Thereafter, however, Employer was furnished a copy of Dr. Jeffries' initial examination report, told that surgery had been scheduled, and asked if it would provide treatment. Through Dr. Jeffries' report, Employer was informed that Employee continued to have severe pain in her lower back, right leg, and foot, as well as numbness and weakness in the right leg, and that her physical activities continued to be limited.

The ALJ found that Employee informed Employer that further treatment was recommended and gave Employer the opportunity to provide that treatment. The undisputed evidence supports that conclusion. The ALJ also found that "[t]he [E]mployer could have directed the treatment with providers of their choosing if they wanted. They did not authorize any further treatment, so . . . they waived the right to direct this treatment and claimant was justified in seeking it on her own." Employer responded to the letter from Employee's attorney by saying, in part, that it would not comply with the request for a decision on payment of Dr. Jeffries' impending surgery by the deadline set by Employee, but that it would "review these mat-

---

1. Employer does not refer to the award of temporary disability benefits in the argument section of its brief.

ters and attempt to assist [Employee] with a reasonable medical plan, given all the facts and circumstances." It did not say when it would do so. More importantly, there was no evidence that it thereafter notified Employee of a desire for her to be examined by a doctor of its choosing before the impending surgery or took any action to provide treatment. This was despite the fact that it was notified more than one month before the scheduled surgery and responded that it would assist Employee with a reasonable medical plan.

Although Employer places great weight on the fact that Employee went to Dr. Jeffries and may have decided on the surgery before Employer was notified, the real question here is whether Employer had notice of the need for additional treatment and failed to provide it. The Commission found that it had that notice and that it failed to take the opportunity to provide additional treatment through physicians of its own choosing.

*Anderson v. Parrish,* 472 S.W.2d 452, 457 (Mo.App.K.C.1971), at least implies that an employer can be held responsible for medical expenses incurred under such circumstances. In that case, the employer chose a physician who provided treatment to the employee. The employee, thereafter, without notice to the employer, selected another physician and obtained additional treatment. The Commission's decision to deny the allowance of those additional medical expenses was affirmed on appeal. In doing so, the court noted:

> Appellant admits that on his own responsibility he went to Dr. Carl Moore, his family physician. *There is no evidence that after Dr. Moore's examination appellant ever made any demand or request for medical treatment or that respondents furnish or pay for the medical treatment Dr. Moore understood to provide.* The Act gives the employee the right to employ his own physician at his own expense, and it is

only when the employer has notice that the employee needs treatment or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails and neglects to provide needed treatment, that the employer is held liable for the medical treatment procured by the employee. (Emphasis added).

*Id.* In the instant case, Employee requested that Employer provide and pay for additional medical treatment after Dr. Jeffries' initial examination and before the surgery was performed. Thereafter, Employer made no attempt to assist Employee with a reasonable medical plan or provide alternative treatment.

It appears to be undisputed that the surgery was successful in relieving some of Employee's symptoms which resulted from the injury in question. Section 287.140.1 generally provides that the employer is required to provide medical treatment "as may reasonably be required . . . to cure and relieve from the effects of the injury." Here, there is no issue about whether the surgery by Dr. Jeffries was reasonably required to cure or relieve from the effects of the injury.[2] To that extent, it clearly falls within the perimeters of the treatment that § 287.140.1 was designed to insure that an employee receives.

We are unable to conclude that, under the applicable standard of review, the Commission erred. Accordingly, we affirm the Commission's decision.

SHRUM, P.J., and BARNEY, J., concur.

---

2. Likewise, there is no issue about the *amount* awarded as past medical expenses.