GARFIELD WARREN v. AMERICAN CAR & FOUNDRY COMPANY, Appellant.—38 S. W. (2d) 718.

Court en Banc, May 11, 1931.*

*NOTE: Opinion filed at October Term, 1930, April 7, 1931; motion for rehearing filed; motion overruled at April Term, May 11, 1931.

756

*Watts & Gentry* and *Arnot L. Sheppard* for appellant.

*Mason, Goodman & Flynn* for respondent.

RAGLAND, C. J.—This is a master-and-servant case—an action at common law—in which plaintiff seeks to recover for personal injuries received during the course of his employment and alleged to have been caused by the negligence of his employer and a co-employee. In the circuit court he recovered a judgment against the former in the sum of $20,000, but as to the latter the judgment was adverse to him. The employer alone appealed, and its appeal is the matter for disposition here.

There is but little conflict in the evidence as to the facts giving rise to the controversy. They will be summarized as briefly as possible.

The appellant, American Car & Foundry Company, was engaged in the manufacture of box cars. Its plant consisted in part of a shed 300 feet in length, north and south, and 150 feet in width, east and west. Within the shed there were six railroad tracks, extending throughout its length. Midway between its north and south ends there was a cross-walk for the use of trucks and pedestrians. At the north end there was a transfer table used in transferring cars from one track to another when being brought into and taken from the shed. At the transfer table there was a steel drum operated by electric power and which was used in drawing, by means of a cable, cars on the several tracks in the shed toward or to the transfer table.

When cars in the process of manufacture were ready for the construction of the bodies they were pushed into the shed on the north by a locomotive engine and placed near the south end. When a car was so placed, the process of construction was commenced: one set of workmen carried flooring from the sides of the shed to the car and it was immediately laid by the floor carpenters; as soon as the floor in a car was completed, another set of workmen brought the posts for the doors and corners; and when they were in place, still other workmen brought the material for the siding. As a car progressed from one stage of the construction to the next, it was frequently moved into a position further north by means of the drum and cable. All material used in building the bodies of the cars was piled at different places along the east and west sides of the shed and was carried to the various cars under construction as needed by the different sets of workmen assigned to that task. These carriers took the shortest routes from the lumber piles to their respective destinations, having in most instances to pass around the north ends of some of the cars standing on the tracks.

At the time respondent received the injuries for which he sues, there were two or three cars being built on each of three of the tracks, known as tracks 1, 2 and 3. How many different crews were working on them does not appear, but the evidence does disclose

that men were continually crossing the tracks here and there carrying material, and that the air was laden with noise from the operation of many air-riveters and sledge hammers, the roar of blast furnaces and the intermittent blowing of a whistle at the transfer table as cars on the tracks were about to be moved.

When the carpenter work on the bodies of the cars was completed, they would be pulled north to the transfer table and from thence moved from the shed. The method followed in bringing a car to the transfer table was this: the defendant Larry would carry the loose end of the cable down to the car to be moved and attach it back about four feet from the north end, the cable lying when so attached on the ground outside of the rails; he would then go to the south end of the car and uncouple it, if it was coupled to another car; he then shouted a warning that the car was about to be moved; he next walked north to the cross-walk, at which point he gave a signal with his hand to the operator of the electric drum; the latter then blew a whistle and applied the power and the drum started revolving; as it revolved the cable wound around it and drew forward the car to which it was attached. The cable was a small steel rope, seven-eighths of an inch in diameter, it was about the color of the ground and lay on the ground until the drum started revolving, when it suddenly became taut and jerked up—to a distance something like two feet near the end of the car.

As Larry always gave the signal to the operator of the drum from the cross-walk, he sometimes, if the car to be moved was a considerable distance south of the walk, and if he found men at hand momentarily unemployed, stationed one or more of them near the end of the car to give warning and prevent persons from stepping in front of it. But appellant provided no men for that purpose, and made no requirement that such precaution be taken.

On November 3, 1926, respondent was engaged with a group of other employees in carrying posts from the piles of lumber in appellant's shed to the various cars therein in the course of construction. He had been in the employ of appellant for several years, but had worked in the shed carrying material only seven days. While he was so employed, and in the afternoon of the day just mentioned, the construction of the north car then standing on track 3 was completed and ready to be removed from the shed. It was eighty feet south of the cross-walk. Thereupon, Larry brought the end of the cable and attached it in the customary manner, uncoupled the car from the one immediately south of it, shouted "look out on track 3" and then, without taking any further precaution to warn employees who might have occasion to pass over track 3, walked to the cross-walk and gave the signal. The operator at the transfer table blew a whistle and started the drum. At that instant re-

spondent was in the act of crossing track 3; the cable, suddenly jerking up from the ground, tripped him and caused him to fall in front of the car which was pulled across him, inflicting grave injuries of a permanent character. Respondent had not seen the cable, nor had he heard a warning of any kind.

The petition charged that the defendant Larry, and appellant through him, were guilty of negligence in that defendant Larry did not give a warning sufficient to bring to the attention of respondent and appellant's other employees that the car was about to be moved. It further alleged:

"Said defendant, American Car & Foundry Company, was also negligent in that by reason of the premises it negligently failed to exercise ordinary care to furnish plaintiff with a reasonably safe place for his said work and negligently failed to exercise ordinary care to adopt reasonably safe precautions for warning plaintiff of the movement of said car as aforesaid; and, as a direct result of said negligence of both of said defendants, plaintiff was injured as aforesaid."

Each of the grounds of negligence just mentioned was submitted under a separate instruction, and, as heretofore stated, the jury found for plaintiff as against defendant American Car & Foundry Company, but in favor of defendant Larry.

The answer of defendants consisted of a general denial and a plea in abatement. The plea concluded as follows:

"Defendants further state that under the terms of said Missouri Workmen's Compensation Act heretofore mentioned and because of the facts hereinabove set out this court has no jurisdiction whatever of the controversy between plaintiff and defendants but that such jurisdiction is lodged exclusively with the Missouri Workmen's Compensation Commission."

The circuit court heard and disposed of the plea in abatement on an agreed statement of facts in advance of the hearing on the merits. The agreed statement contained, among others, the following stipulations:

"The Workmen's Compensation Commission provided in said act was appointed on the 15th day of November, 1926, and prior to that time there was no workmen's compensation commission in the State of Missouri;

"Neither the plaintiff nor the defendant, American Car & Foundry Company, at any time filed any written notice with the Workmen's Compensation Commission that he or it rejected the Workmen's Compensation Act."

The court overruled the plea in abatement and the cause then proceeded to trial on the merits with the result above stated.

The grounds relied upon by appellant for a reversal of the judgment are these: (1) The petition does not state a cause of action; (2) the circuit court was without jurisdiction of the cause; (3) the verdict is contradictory and self-destructive; and (4) respondent's counsel was permitted over appellant's objection to make an improper argument to the jury.

I. Appellant contends that the petition does not state a cause of action at common law for the reason that it fails to plead facts showing the inapplicability of the Missouri Workmen's Compensation Law. In support of this contention it cites cases holding that where an exception to the right of the plaintiff to recover is contained in the same section of the statute which gives the right of action, the petition must be so framed as to show that the defendant is not within the exception. [Russell v. Railroad, 83 Mo. 507, 511.] There is another rule equally well sustained by the authorities, namely: If a general liability is created by statute, the exceptions to such general liability created in other sections of such statute or by other statutes need not be negatived by the pleader, but must be asserted in defense by the defendant in his answer. [Span v. Coal & Mining Co., 16 S. W. (2d) 190, 200.] If either of these rules relating to pleading statutory causes of action is by analogy applicable in the instant case, it is the latter. This because the common law as to the relation of master and servant and the employment incident thereto remains in full force and effect in this State, except where modified or abrogated by statute: the common law creates the general liability whereby employers are made to respond in damages for injuries suffered through their negligence by their employees; the Workmen's Compensation Act creates exceptions—it exempts employers from such liability as regards certain employments, if specified conditions be complied with. Where the action is at common law, invoking common-law liability only, an exception with respect to such liability created by statute can never be an element of plaintiff's cause of action: it is purely a matter of defense. If the petition in such a case disclose on its face facts which bring the case within an exception created by statute, it is of course demurrable; but if no such facts are disclosed on the face of the pleading, and they exist, they must be asserted in the answer, as was attempted to be done in this case. The principles of pleading applicable here are considered and discussed at length in Span v. Coal & Mining Company, supra. Appellant's contention is overruled.

II. It is next asserted by appellant that the Circuit Court of the City of St. Louis had no jurisdiction of this cause for the alleged

reason that the rights of respondent and appellant were governed exclusively by the provisions of the Workmen's Compensation Act. This it pleaded as a defense and with respect to such defense it had the burden of proof. That is, it was incumbent upon it to show that the particular employment involved, with respect to injuries sustained by the employee in the course thereof, had been withdrawn from the operation of the common law by the Workmen's Compensation Act.

The Missouri Workmen's Compensation Act is contractual and elective. [State ex rel. Syrup Co. v. Compensation Commission, 320 Mo. 893, 8 S. W. (2d) 897.] It becomes a part of every contract of employment falling within its purview when, and only when, it is accepted by both employer and employee. Section 2 of the act provides: "Every employer and every employee . . . shall be conclusively presumed to have elected to accept the provisions of this act and respectively to furnish and accept compensation as herein provided, unless prior to the accident he shall have filed with the commission a written notice that he elects to reject this act." [Laws 1927, p. 492.] This language presupposes the existence of a commission, prior to the accident, with which a notice may be filed, for obviously a notice cannot be filed with a commission which does not exist. The existence of a commission prior to the accident is therefore one of the basic conditions which by force of the statute create a conclusive presumption of acceptance of the Act; if this condition is non-existent the presumption does not arise. The Workmen's Compensation Act was adopted and went into effect on November 2, 1926; on the day following, November 3rd, respondent sustained the injuries complained of; a commission was not appointed pursuant to the act until November 15th, following. For the reasons heretofore given no presumption arose from respondent's failure to have filed with the commission prior to the accident a written notice that he elected to reject the Act. Appellant having failed to offer any proof that respondent had in fact accepted the act prior to the accident, the circuit court properly ruled that the rights and liabilities of the parties were not governed by its provisions.

III. The claim that the verdict is contradictory and self-destructive rests upon the idea that plaintiff's case is based upon the alleged negligence of defendant Larry and that as the jury found Larry guiltless their verdict in that respect necessarily acquitted the appellant. But under the pleadings and the evidence appellant's liability does not rest solely upon the doctrine of *respondeat superior*. It was alleged in the petition, and there was evidence tending to show, that the ap-

pellant negligently failed to adopt in and as a part of the plan of its operations reasonably safe precautions for warning plaintiff and its other employees of the movements of cars in its shed, and thereby negligently failed to furnish them a reasonably safe place in which to work. Its duty in this respect being non-delegable, appellant was liable for a breach of it, regardless of whether its agents were, or were not, negligent in the premises. There is therefore no inconsistency between the finding against the appellant on one issue of negligence and the finding in favor of defendant Larry on another. The verdict is not obnoxious to the criticism leveled against it.

IV. During the closing argument the following occurred:

Plaintiff's counsel: "I say no fair-minded man can, in my opinion, find that Garfield Warren was guilty of negligence at all, and even if he was, there is no plea of contributory negligence in this case, and you should find in favor of Garfield Warren notwithstanding his negligence, if any, if you believe from the evidence that the defendant, American Car & Foundry Company, also was negligent, and that they did not furnish him with a reasonably safe place in which to work—and that the American Car & Foundry Company's negligence, as specified in the instructions, directly caused the injury."

Defendant's counsel objected:

"There are no instructions upon which to base that statement that the jury should find for Warren even though they found him to be negligent, if they also found that the American Car & Foundry Company was negligent. That is not based on the instructions."

The objection was overruled by the court.

Of course counsel who see fit to go to the jury without written instructions by the court should not be permitted to attempt to supply the omission in their argument. [Powell v. Railroad, 255 Mo. 420, 457, 164 S. W. 628.] But that is not this case. Contributory negligence was not pleaded as a defense, but the defendant asked, and the court gave, an instruction telling the jury that if they found that plaintiff failed to exercise ordinary care for his own safety, "and that such failure, if any, on his part, was the sole, direct and proximate cause of his injury," their verdict must be for defendant. The statement objected to was made by plaintiff's counsel in discussing the evidence with reference to that instruction and the state of the pleadings. Taken as a whole it did not reflect an incorrect view of the applicable law, nor was it improper as argument.

The judgment of the trial court is affirmed. All concur, except, *Ellison* and *Henwood, JJ.*, not sitting.