William A. COLEMAN, Appellant,

v.

HERCULES POWDER COMPANY,
Respondent.

No. 7445.

Springfield Court of Appeals. Missouri.

Nov. 7, 1955.

Max H. Glover, Webb City, for appellant.

John W. Scott, Haywood Scott, Joplin, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Circuit Court of Jasper County affirming final award of the Industrial Commission of Missouri, denying compensation to William A. Coleman, claimant.

June 17th, 1952, William A. Coleman filed claim for compensation with the Missouri Workmen's Compensation Commission for injuries sustained by accident arising out of the course of his employment with the Hercules Powder Company by lifting an 80 pound nipple plate which shifted causing claimant's back to be strained and twisted, and, as a result, he sustained a ruptured disc, torn ligaments and bruised muscles in his back.

The answer was a general denial that claimant was injured while in its employ on February 2, 1951, at its plant in East Carthage, Missouri, and a denial that there was an accident or that appellant received injury by any such accident. A further defense was pleaded that the claim was not filed within one year from Febraury 2, 1951, and is barred.

The cause was heard before the Referee May 5, 1953, and the following award made:

"I find from all the evidence that William A. Coleman, employee, failed to prove that the disability complained of by him is the result of an accident arising out of and in the course of his employment with Hercules Powder Company, as alleged. I further find that the claim for compensation was not filed within one year after the date of the alleged accident, within one year from the date of the last compensation payment, or within one year from the the date of last medical treatment rendered the employee and furnished by the employer; therefore,

compensation must be and the same is hereby denied."

Application for review before the full Commission was filed September 3, 1953, and final award was made by the Commission as follows:

"We find from all the evidence that William A. Coleman, employee herein, did not sustain an accident February 2, 1951, within the meaning of the Missouri Workmen's Compensation Law.

"We further find that the employee's alleged disability was neither caused nor aggravated by the alleged accident of February 2, 1951.

"Compensation, therefore, must be and the same is hereby denied.

"Affirming on review award dated May 5, 1953."

The cause was appealed to the Circuit Court and on review the court affirmed the award and judgment of the Commission, from which judgment claimant appeals to this court.

Appellant's first allegation of error states: "Appellate Courts, in a Workmen's Compensation case, may examine the record, and set aside the decision of the Commission."

█ This statement is an abstract proposition of law and presents no issues for decision. Berghorn v. Reorganized School Dist. No. 8, 364 Mo. 121, 260 S.W.2d 573; 42 V.A.M.S.Supreme Court Rule 1.08; Dansker v. Dansker, Mo.App., 279 S.W.2d 205.

Appellant's second allegation of error states that the Referee, Commission and trial court erred in not finding there had been an injury to appellant from an accident arising out of and in the course of his employment with the Hercules Power Company.

The Referee found that appellant failed to prove that the disability complained of by him was the result of an accident arising out of and in the course of his employment. But the Commission, on review, found that appellant did not sustain an accident February 2, 1951, within the meaning of the Workmen's Compensation Law, Section 287.010 et seq. RSMo 1949, V.A. M.S., and it also found that the alleged disability was neither caused nor aggravated by the alleged accident of February 2, 1951.

█ The record discloses that the Commission failed to make findings of fact upon which it based its award and conclusion of law. Under such circumstances this court will review the whole record to determine if the award and judgment of the Commission were sustained by substantial evidence and were not against overwhelming weight of the evidence. Francis v. Sam Miller Motors, Inc., Mo., 282 S.W.2d 5; Waring v. Metropolitan Life Insurance Co., 225 Mo.App. 600, 39 S.W.2d 418, 423; Sec. 22, Art. V, Const. of Mo., 1945, V.A.M.S.

█ Under the law, the award of the Commission (absent of fraud) is conclusive on appeal if supported by substantial evidence. Collins v. Reed-Harlin Grocery Co., Mo.App., 230 S.W.2d 880; Mabry v. Tiffany Stand Co., Mo.App., 235 S.W.2d 863.

█ A general award of compensation implies a finding of fact necessary to support it, and thus failure to find fact will not defeat an award, but a finding of fact inconsistent with the conclusion of the Industrial Commission will do so. Cebak v. John Nooter Boiler Works Co., Mo.App., 258 S.W.2d 262.

█ Section 287.460 RSMo 1949, V.A. M.S. requiring findings of fact to be made by the Industrial Commission, in Workmen's Compensation proceedings and section 287.490, providing that question on appeal to the Circuit Court in Workmen's Compensation proceedings is whether facts found by the Commission support award, contemplate an unequivocal affirmative finding as to what facts are. Michler v.

Krey Packing Co., 363 Mo. 707, 253 S.W. 2d 136.

■ In Workmen's Compensation proceedings it is the award of the Commission that is before the court for review and not the award of the Referee and the Referee's award is but a factor to be considered in determining whether award of Commission is supported by evidence. Clark v. Frazier-Davis Const. Co., Mo. App., 258 S.W.2d 934.

■ In Francis v. Sam Miller Motors, Inc., supra, 282 S.W.2d at page 11, the law is stated:

" * * * This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.' Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W. 2d 647, 649; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62."

■ The burden of proof in the instant case rests upon appellant-claimant to prove that there was an accident compensable within the meaning of the Workmen's Compensation Law and that the injury complained of arose out of and in the course of his employment and from the alleged injury sustained. Fowler v. Baalmann, Inc., 361 Mo. 204, 234 S.W.2d 11, 16; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55.

The record evidence in the instant case consists of the testimony of many witnesses and much medical testimony. We shall state the testimony most favorable to the findings of the Commission on the issues raised.

The first issue presented is, did the Commission err in its award and judgment that appellant-claimant did not sustain an accident February 2, 1951, within the meaning of the Missouri Workmen's Compensation Law?

The evidence offered shows that claimant-appellant was an employee of Hercules Powder Company, near Carthage, Missouri, and had been since 1945; that for some time prior to February 2, 1951, a part of his duties required him to change the nipple plates, which weighed about 80 pounds, on the Pneumatic Packing machine. The evidence is that on February 1st or 2nd, 1951, appellant came to work at 7:00 o'clock in the morning and about 7:30 he claims to have been injured while changing a nipple plate. The only testimony of an accident from which appellant claims an injury was his, which is as follows:

"Q. Will you tell the Judge, the best you recall, exactly what happened at the plant in the process of changing that nipple plate? A. In changing that nipple plate, I was bent over, in a position to set the nipple plate down. As I bent over with that, it seems as if the thing shifted with me because I was off balance. At that time I felt something give in my back. I went ahead and twisted and set the nipple plate down but I was unable to straighten up.

"Q. Was there any pain when you tried to straighten up? A. Yes."

The witness testified that at the time of the alleged accident he did not slip or fall. He testified he worked the balance of the day on which he was alleged to have been injured; that the next day he told Cecil Hoge, his foreman, of the accident and was, by Hoge, advised to go to the company doctor. He stated he went to Dr. McNew on the next day who told him he had a lumbar sprain and put a

brace or belt on him and gave him five heat treatments; that he had other heat treatments at the plant, the last being in July, 1951; that Dr. McNew made periodic examinations of employees at the plant and each time appellant informed the doctor of the pain in his back. He testified that the pain was not continuous but would hurt him when he stooped over to pick up something off the floor or after he had worked two or three hours it would pain him until he rested for six or eight hours.

Appellant admitted that after going to Dr. McNew on February 2, 1951, he returned to his usual employment and worked continuously there until he quit work in April, 1952. He testified that he was put on lighter work because of his injury and that upon his request the method of changing the nipple plate was changed from the use of a rope to lift the plate to that of a box to slip the plate in position, which made the work less hazardous. He stated the foreman advised him after the injury how to use the box; that the box had been in the room since July, 1950, but he did not know what it was for. He testified that in February, 1952, he was examined by Dr. McNew, who found he had tonsil trouble and sent him to McCune-Brooks Hospital for X-rays; that he there saw Dr. Ferguson who had him admitted to St. John's Hospital in Joplin and he called in Dr. Grantham for consultation in April, 1952; that Dr. Grantham later performed an operation for removal of a disc; that he had been unable to work since this operation.

Dr. Grantham testified that appellant had a ruptured disc and that, in his opinion, this condition might have been progressive and it could have been caused by the accident claimed. This testimony was corroborated by Dr. DeTar.

The testimony on part of respondent by witnesses who worked with appellant, at the time of the injury, was that there was no accident or anything unusual that happened at the time appellant claimed to have injured his back. The testimony was conflicting as to the method used in changing the nipple plate at date of alleged injury. One of respondent's witnesses testified that he made the box used for the changing of the nipple plate in July, 1950, and that, in a few days, it was put into use and he saw appellant using the box all during the time from July up until the alleged accident and the box was being used at the time of accident. He testified the nipple plate was placed upon the box, which was about 36 inches high, slipped into place and all appellant had to do was put his hand through a hole in the box and fasten the lugs which held it in position; that there was no lifting. The evidence shows that appellant had a helper in fastening the nipple plate and the helper testified there was no unusual happening or injury that he knew of on February 1st or 2nd.

The old method used for fastening the plate was that it was brought in, placed on the floor, a rope placed through a pulley, tied in the eye of the plate, lifted up by the helper and held while appellant stooped over and fastened the lugs. The testimony showed that at the time of the alleged accident there were five nipples in the room. Respondent's testimony was to the effect that appellant's work was never changed (as he testified).

The evidence discloses that appellant entered the armed forces in 1940 as a private, was promoted to rank of sergeant, later reduced to a private and discharged in 1944, because he could not perform the duties of a sergeant. He testified he had ulcers which caused his disability. The testimony is that Dr. McNew had examined appellant numerous times after his discharge from the Army, in 1947, 1948, and 1949, and he testified that appellant was a neurotic. This testimony was confirmed by some three other doctors. One doctor said he had a traumatic neurosis. Appellant admitted that at the time of his discharge from the Army he was in a very nervous condition; that he was discharged with a thirty per cent disability, which was later reduced to ten per cent.

The medical testimony on the part of respondent was to the effect that if appellant had ruptured a disc in the alleged accident, the pain would have been so severe he could not have continued to work. The doctors also testified that when appellant first came to them he did not tell them he had pain when he started to straighten up. Dr. McNew stated that appellant said that while changing a nipple plate he got weak all over, sudden; that in the next hour his back felt weak and he began getting stiff after he sat around a bit. The doctor was asked if appellant had told him on February 1st that he had any pain and he stated, "No, sir". The doctor said his examination disclosed that appellant did not have an acute and sudden sharp, severe radiating pain typical of a herniated disc.

█ From a consideration of all of the evidence in the record, it is our judgment that there was substantial evidence to support the findings of the Commission that claimant-appellant did not sustain an accident February 2, 1951, within the meaning of the Missouri Workmen's Compensation Law.

Under section 287.020(2) RSMo 1949, V.A.M.S. accident is defined:

"2. The word *accident* as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.

"3. The term *injury* and *personal injuries* shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. * * *"

In Howard v. St. Louis Independent Packing Co., Mo.App., 260 S.W.2d 844, 845, the Commission found that there had been an accident and made the following finding of fact as to how it happened:

" 'Employee suffered unusual strain when a forequarter of beef struck his left shoulder with unusual force as he swung said beef on his shoulder.' "

The court of appeals, in holding that this did not constitute an accident within the meaning of the statute, said:

"As our act is written, the employer's liability is to furnish compensation for the injury or death of his employee 'by accident' arising out of and in the course of the employment. Section 287.120 (1). In other words, for a disabling industrial injury to be compensable, it must be sustained by accident, which the act defines as an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of injury. Section 287.020 (2). It is thus to be seen that the injury itself is not the event but the result which the event produces, so that in a case of the character of the one at bar, where the injury results from the intentional act of the employee in exerting muscular force in connection with his handling of some inanimate object while performing the incidents of his employment, there must be some unusual occurrence, such as a slip, or a fall, or abnormal strain, in order to bring the case within the coverage of the act. * * *" (See cases cited.)

In Palmer v. Knapp-Monarch Co., Mo. App., 247 S.W.2d 341, on page 344, cited in the above case, the court made this statement of law:

"It is clear that the foregoing evidence does not make a case of 'accident' as that term is defined by Sec. 287.020 (2), supra. There is no evidence of an unusual occurrence, such as a slip, fall, or any unexpectedness with reference to the events preceding the injury. What claimant did was intentionally done, exactly in accord with preconceived design.

"Appellant contends that if the 'result', that is, the 'injury' is unexpected and unforeseen, there is an accident within the meaning of the act."

The facts in this case were that the injury resulted from exertion in lifting a heavy box. Claimant felt a snap in her back which caused pain. The court held that this did not cause an injury from an accident as defined in the workmen's compensation law. 247 S.W.2d on page 345 of the opinion the court comments upon Neidert v. United Transports, Inc., Mo.App., 167 S.W.2d 404. That case is relied upon by appellant in the instant case. In that case claimant sustained a rupture while changing a tire, the question was whether or not the rupture was the result of an accident within the meaning of the law. It was shown that at the time claimant received injury he was attempting to remove a lug, and for that purpose was using a pipe attached to a wrench. He had assumed an unusual position by placing his foot on the pipe. It was shown that the lug was frozen, an unforeseen and unexpected condition, and with the result that in jerking and pulling the pipe claimant strained himself and a rupture followed. It was held that this constituted an accident. This case was transferred to the Supreme Court on the ground that the opinion was in conflict with DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834, and a number of other cases cited. The Supreme Court interpreted the opinion of the Court of Appeals as holding that the unexpected encountering of the frozen lug and the jerking of the pipe was an unexpected and unforeseen event which happened suddenly and violently, causing claimant's injury within the definition of the statute.

The Supreme Court did not uphold the opinion of the Court of Appeals but merely held that it was not in conflict with the decisions stated.

In LaForge v. Coglizer Tent & Awning Co., Mo.App., 205 S.W.2d 957, this court held that the phrase "objective symptoms" as used in the Workmen's Compensation Act defining "accident" means symptoms which a physician discovers from an examination of his patients as contradistinguished from "subjective symptoms" which are those the physician concludes exists because his patient says so.

There was a conflict of testimony in the instant case as to the circumstances of how claimant's injury, if any, was sustained. Claimant says that while stooped over in attempt to place the nipple plate it seemed as if the thing shifted and he was off balance. Respondent's testimony was that claimant was using a box which held the nipple plate in position and there was no accident. Claimant was only doing his usual job. He did not slip or fall, and, we think the trial court was justified in finding there was nothing in the nature of a mishap, save the injury itself, caused by claimant's stooping over.

We find there was substantial evidence to support the award and judgment of the Commission that claimant-appellant's alleged disability was neither caused nor aggravated by accident of February 2, 1951.

There was evidence that claimant was a neurotic and in a very nervous condition when discharged from the Army; that at the time of the injury he was a neurotic; that the medical testimony was to the effect that had he received a ruptured disc he could not have continued work from the date of injury February 2, 1951, until April, 1952, the time he quit work; that appellant was engaged in other business and that his ruptured disc, which was discovered in 1952, could have been caused by numerous acts. The fact that appellant continued his usual work for more than a year, and, later, was paid for non-occupational illness, indicates that the removal of a disc was not connected with the alleged injury.

Judgment affirmed.

STONE and RUARK, JJ., concur.