**Arnold HENDRICKS,
Claimant-Respondent,**

v.

**MOTOR FREIGHT CORPORATION and Home Indemnity Company, Employer and Insurer-Appellants.**

**No. 38913.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

July 5, 1978.

Motion for Rehearing and/or Transfer Denied Sept. 15, 1978.

Application to Transfer Denied Oct. 10, 1978.

Robert Moss, J. Lloyd Wion, Wion, Burke & Boll, Clayton, for employer and insurer-appellants.

Jack Randall, St. Louis, for claimant-respondent.

SNYDER, Judge.

Employer and insurer appeal from a judgment of the circuit court affirming a final award of the Industrial Commission granting benefits to respondent for total disability and assessing a penalty against appellants for failing to comply with the temporary award as permitted by § 287.510, RSMo 1969.

The major issue presented for determination is the effect of an error by the respondent in the date of the accident as shown on his claim for compensation form received on July 28, 1972. Three allegations of error raised by appellants stem from the dispute concerning the reported date of the accident. They are: (1) the question of the sufficiency of the competent evidence to support the award; (2) the alleged error in the exclusion of certain written statements of respondent and a state trooper because copies of the statements were not supplied to respondent within seven days after a written request as mandated by § 287.215, RSMo 1969; and (3) a contention that the Commission acted in excess of its powers,

contrary to the facts found and in an arbitrary and capricious manner in awarding medical payments to respondent and in doubling the temporary award. Appellants also charge that the Commission erroneously and in excess of its powers permitted the referee to deny a continuance for the taking of depositions of medical witnesses and that the Commission erred in finding no change in respondent's disability status notwithstanding that respondent returned to work for a short period.

Respondent Arnold R. Hendricks was employed as an over-the-road truck driver for Motor Freight Corporation. At 4:20 a. m. on June 13, 1972, he was driving the return leg of a run from St. Louis to Princeton, Indiana. At Breese, Illinois his tractor trailer jackknifed on wet pavement. The trailer body twice struck the tractor cab on the back of the driver's side and knocked respondent about the cab. Respondent telephoned Harry Johnson, Motor Freight's operations manager, at the St. Louis terminal and informed him of the accident. Another tractor was dispatched immediately to bring the wrecked unit back to St. Louis.

When respondent arrived at the St. Louis terminal, he filled out his logbook and then told Johnson he could not finish working the balance of his shift because his back was hurting. The next day respondent made an appointment with an orthopedic surgeon, Dr. Thomas Meirink. Within a couple of days of making that appointment, and before he actually saw Dr. Meirink on July 7, respondent told Johnson and Carl Froehlich, Motor Freight's terminal manager, that he had made an appointment with Dr. Meirink to have his back examined. Between June 13 and July 7, respondent missed several days of work because of back pain.

After a course of conservative treatment failed to alleviate the back pain, Dr. Meirink performed a laminectomy on August 2, 1972. Despite that surgery and continued treatment, respondent has not been able to return to work on a regular basis since June of 1972. All attempts to resume his duties as a driver have ended in the same result: an increase of back pain forcing him to stop driving.

On July 27, 1972, a claim for compensation was filed. In this claim, the date of the accident was given as *June 12*, 1972. The accident actually happened at 4:20 a. m. on *June 13*, 1972. Appellants did not request an extension of time for filing their answer and no answer was filed until December 18, 1972, nearly five months after the filing date of the claim.

On November 13, 1972, respondent's counsel made a request under § 287.215, RSMo 1969 for any statements made by or on behalf of respondent about the *June 12*, 1972 accident. No answer was received to that request until late December of 1972, months after the seven days then allowed by the statute for a response.[1]

Truck drivers are required by the Interstate Commerce Commission's regulations to keep a daily log of their activities. By Motor Freight's policy, their drivers' logbooks are based on a twenty-four hour day running from noon to noon. Thus, while the accident at Breese, Illinois occurred at 4:20 a. m. June 13, respondent reported it in his logbook under the June 12 work period because it took place prior to noon of June 13.

A hearing on the claim for compensation commenced on March 21, 1973. In response to respondent's request for leave to amend his claim by interlineation to state the accident date as June 13, 1972, the referee ruled that the claim did not have to be amended because by Motor Freight's own written policy on logbooks, the accident had occurred during the twenty-four hour period designated June 12 in respondent's logbook and because there was only one accident at Breese, Illinois involving respondent, an accident of which appellants had actual

1. Section 287.215, RSMo 1969 was amended in 1973 by changing the seven days to fifteen days.

knowledge almost from the time it happened.

Certain exhibits and the testimony of an Illinois state trooper relating to his accident report were ruled inadmissible because of the appellant's failure to comply with the seven day response requirement of § 287.-215, RSMo 1969. Before the March 21, 1973 hearing recessed, appellants were granted leave to depose two doctors, Dr. Meirink and Dr. Zenarosa. The depositions were to be taken during the month of April. The hearing resumed and recessed again on April 3, 1973. On April 16, 1973, appellants wrote a letter to the referee requesting leave to take the depositions on May 18 and May 24. Respondent's counsel objected, also by letter. When the hearing resumed on May 9, 1973, the depositions had not yet been taken. With the doctors' reports already admitted, the referee declined to grant the employer a continuance to take the depositions later in the month and closed the case.

On June 13, 1973, a temporary award and findings of fact and rulings of law were handed down. The award granted respondent $70 a week from July 10, 1972 until such time as he was able to return to work. Appellants were also ordered to reimburse or make direct payment for $2,267.30 in medical bills and to assume the expense of all future necessary treatment.

A hearing on respondent's continued disability was held on June 19, 1974. Evidence of continued disability and additional medical expenses was presented. Appellants had paid the weekly disability benefits, but they had failed to pay the medical expenses as ordered in the temporary award. Respondent requested the referee to double the temporary award, as allowed by § 287.-510, RSMo 1969, as a penalty for that failure. The final award dated September 26, 1974 found respondent to be permanently and totally disabled and awarded him 300 weeks of compensation at $60 per week and a life pension thereafter of $50 per week. Appellants were also ordered to pay all past

and future related medical bills. Finally, as a penalty the temporary award ($9,267.30) was doubled because the appellants had failed to pay the medical bills.

On May 22, 1975, the Commission ordered an evidentiary hearing on the appellants' motion to void or reduce and amend the award. The sole issue was to be whether there had been a change in respondent's physical condition so as to justify modifying the award. The evidence at this hearing held on October 21 and 23, 1975 indicated that respondent on his own initiative had received cortisone shots in his back in September of 1974 and had returned to work for short periods in September and October after receiving releases from two doctors. However, when the beneficial effects of the cortisone wore off, claimant again had to quit driving because of back pain. Respondent also worked briefly in September of 1975. Both appellants' medical witness and respondent's medical witness testified that respondent's physical condition was unchanged at the time of the hearing.

On February 3, 1976, the Commission adopted and affirmed its final award of September 26, 1974, finding no change in condition. The appellants' application for review was timely filed. The circuit court affirmed the award and this appeal ensued.

The scope of appellate review in workmen's compensation cases is limited. The Commission's award, absent fraud, is conclusive on appeal if supported by substantial evidence. *Coleman v. Hercules Powder Company*, 284 S.W.2d 32 (Mo.App. 1955). The reviewing court does not substitute its judgment for that of the Commission. The function of the reviewing court is to determine whether the Commission's findings are supported by competent and substantial evidence. If so, they must be affirmed. The record must be reviewed as a whole, including all legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission. *Miller v. Sleight & Hellmuth Ink Co.*, 436

S.W.2d 625 (Mo.1969); *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292 (Mo.1965). Only if the decision is clearly contrary to the overwhelming weight of the evidence may we set it aside. We may not substitute our judgment on the evidence for that of the Commission even though a finding by the Commission to the contrary would also have been supported by the evidence. *Schmidt v. Rice-O'Neill Shoe Co.*, 226 S.W.2d 358 (Mo.App.1950).

■ Appellants contend that the award is not supported by competent and substantial evidence because no accident occurred on June 12, 1972, the day alleged in the claim. Respondent, at the initial hearing on March 21, 1973, moved to amend his claim by interlineation to change the date of the accident to June 13, 1972. The motion was initially granted, but the referee reversed himself and allowed the claim to stand as it was. His reasoning was that the error in the date was the result of Motor Freight's policy on logbook dating.

In his findings, the referee reiterated his position and found "that any error in the date was an understandable and excusable error and that the employee's claim is not defective and not in any way in need of clarification and/or amendment." Further, because appellants had failed to file an answer to the claim in the time permitted under the rules of the Department of Labor and Industrial Relations, Division of Workmen's Compensation, 8 C.S.R. 50–2.010(13), the fact of the accident was taken as admitted.

The major thrust of appellants' case on appeal is based on the June 12, 1972 accident date shown on the claim for compensation. They argue that they were not required to file an answer because no injury occurred on June 12, 1972. They say further that it was not necessary to furnish copies of statements made by or on behalf of respondent in accordance with § 287.215, RSMo 1969 since the request for the copies again related to a nonexistent accident on June 12, 1972.

The Commission found that the claim was not defective and allowed it to stand as submitted. The evidence in support of that finding is substantial. Appellants clearly knew what accident was involved in this claim. There was only one accident near Breese, Illinois in which a truck driven by respondent jackknifed on a rain slick pavement. It was reported by respondent immediately and Motor Freight immediately dispatched another trailer to recover the disabled unit. Upon his return to the St. Louis terminal, respondent told Harvey Johnson, Motor Freight's operations manager, that he could not complete his shift because of his back pain. There can be no doubt that appellants knew the specific accident which was at issue. Motor Freight's written policy required that logbooks be based on noon to noon work periods. So by Motor Freight's own system of dating the accident occurred on the June 12 workday.

Appellants' reliance on the date discrepancy is not in keeping with the purpose and spirit of the Workmen's Compensation Act which is intended to provide benefits to employees in all cases of accidents occurring in the course of their employment. No prejudice resulted to appellants here except as a result of their unjustified reliance on the inadvertent and understandable, in view of Motor Freight's logbook procedure, error as to the exact date of the accident.

An analysis of Missouri case law reveals no decisions on this point. However, cases in other jurisdictions have permitted consideration of claims in spite of mistakes as to dates in claims for compensation. "In pleadings under a compensation act, calling things by wrong names, or bringing a petition under a wrong title, or making other harmless mistakes as to details such as dates, are immaterial if the intention of the pleading is clear." Larson's Workmen's Compensation Law, Vol. 3 (1976), § 78.11, pp. 15–9 and 15–10.

A Louisiana claim for compensation was held not to be fatally defective because it alleged the date of the accident to be July

13, 1953 when in fact, the accident occurred on August 3, 1953. The court held that since the employer's record showed the correct date and the employer had full knowledge of the accident, the error did not mislead the employer and the claim should be considered. *Ortego v. Southern Industries Co.*, 88 So.2d 73 (La.App.1956). However, our major reason for ruling against appellants on this point is their immediate and continuing knowledge of the accident in question and the total absence of prejudice to appellants resulting from the date discrepancy.

There was substantial and competent evidence to support the Commission's ruling and award.

■ Appellants' next claim of error relates to the refusal to receive in evidence four exhibits offered by appellants and the testimony of the state trooper as to statements made by respondent. The exhibits offered were written statements by or on behalf of respondent.

The basis for the refusal to admit the evidence offered by means of the four exhibits and the trooper's testimony is § 287.-215, RSMo 1969 which at the time of the hearing provided:

> No statement in writing made or given by an injured employee, whether taken and transcribed by a stenographer, signed or unsigned by the injured employee, or any statement which is mechanically or electronically recorded, or taken in writing by another person, or otherwise preserved, shall be admissible in evidence, used or referred to in any manner at any hearing or action to recover benefits under this law unless a copy thereof is given or furnished the employee, or his dependents in case of death, or their attorney, within seven days after written request for same by the injured employee, his dependents in case of death, or by their attorney.

On November 13, 1972, respondent's attorney sent a letter to appellant Home In-

demnity Company requesting copies of "any statements taken from my client by the employer concerning this accident or injury, whether such statements were taken by the employer or anyone on their behalf." The date of "this accident" is given earlier in the letter as "6–12–72". No response was received to this letter until December 29, 1972.

There is no dispute that these documents are covered by the statute, were requested, and were not furnished until well after the expiration of the mandated seven day period. Since the trooper's testimony would have been based on a barred exhibit it was properly refused. Appellants' only argument in support of this point is based on the misstatement of the accident date. They say they were not obligated to furnish the statements because no accident occurred on June 12, 1972 and that a refusal to admit the exhibits and testimony penalizes the appellants for failing to furnish what was not requested. Reliance on the erroneous date did not justify appellants' failure to furnish copies of the statements within the statutory period. Admission of the statements and testimony was properly refused.

Appellants next contend that the Commission erred in refusing to allow them to take the depositions of Dr. Meirink and Dr. Zenarosa, a point which is not well stated, since there was no ruling that the depositions could not be taken, only a refusal to grant a continuance for the purpose of taking them.

There were hearings on March 21, April 3 and May 9, 1973. On April 16, 1973, appellants wrote a letter to the referee requesting leave to take the depositions on May 18 and May 24.

Respondent's counsel objected and when the hearing resumed on May 9, 1973 the depositions had not been taken. Both Dr. Zenarosa's and Dr. Meirink's reports were admitted into evidence and in the belief that the depositions would be limited by the scope of the reports and in the interest of avoiding further delay when the record was

sufficient for decision, the request for continuance was denied. Section 287.560, RSMo 1969 provides in part:

The division, any referee thereof or the commission, shall have power to issue process, subpoena witnesses, . . . and to cause the deposition of any witness to be taken . . .. Any party shall be entitled to process to compel the attendance of witnesses . . . and . . . to take and use depositions in like manner as in civil cases in the circuit court.

■ In civil cases, continuances are within the discretion of the court. Denial of a continuance is rarely reversible error; only if there has been an abuse of discretion will the court's action be reversed. Every intendment is in favor of the court's ruling on appeal. This is partly because of the trial judge's duty and right to control his docket and the progress of litigation. *State ex rel. State Highway Com. v. Herman*, 546 S.W.2d 488 (Mo.App.1976); *Blessing v. Blessing*, 539 S.W.2d 699 (Mo.App.1976). The same consideration should be given to the referee's decision here.

■ The appellants had nearly nine months to secure the depositions or the appearances of these two doctors. They failed to do so. It was not error to refuse the continuance. See, *Bedenk v. St. Louis Public Service Company*, 285 S.W.2d 609 (Mo.1955).

Appellants allege error in the award of medical expenses to respondent and in doubling the temporary award as a penalty. The temporary award included the sum of $2,267.30 in medical expenses. The final award included an additional $710.75 for medical expenses incurred between the times of the temporary and final awards. There was no dispute as to the reasonableness of the bills. Appellants' sole contention was that the respondent selected his own physician. Under § 287.140(1), RSMo 1969, if an employee selects his own doctor he must pay the expenses.

■ There was substantial evidence to support the finding in the temporary award that appellants were fully advised, subsequent to the date of the accident and prior to the date respondent entered the hospital for surgery, first by respondent and later by the bills furnished to appellants by respondent's doctors, as to the progress of the injuries and treatment. At no time did Motor Freight make any move to have respondent examined or provide him any treatment, nor did Motor Freight ever attempt to call in doctors to consult with the other doctors who were known by the employer to be treating respondent.

Motor Freight had actual knowledge of respondent's injury on June 13, 1972. Within a few days, Johnson and Froehlich were informed by respondent that he had scheduled an appointment with Dr. Meirink. They did not object or suggest he see a doctor acceptable to them. Between the date of the accident and his surgery, respondent missed several days of work. Respondent gave Motor Freight notice of the operation so he could be given the necessary time off. Motor Freight received the first doctor bill on August 3, 1972. After the operation they failed to suggest a doctor or provide medical care.

■ The case law under § 287.140(1), RSMo 1969 clearly establishes that while the employer has the right to name the treating physician he may waive that right by failing or neglecting to provide necessary medical aid after receiving notice of the injury. *Slider v. Brown Shoe Company*, 308 S.W.2d 306 (Mo.App.1958); *Hammett v. Nooter Corp.*, 264 S.W.2d 915 (Mo.App. 1954). The employee then may make his own selection.

*Schutz v. Great American Ins. Co.*, 231 Mo.App. 640, 103 S.W.2d 904, 910 (Mo.App. 1937) quotes the general rule that:

'Where the employer has neglected or refused to provide the necessary services or treatment, or has consented affirmatively, or his consent is to be inferred from his inaction, to selection by the employee, or, having knowledge of such selection, has interposed no objection, or

where the physician selected by the employer is not available when required, the employee may make his own selection, the fees and expenses to be charged to the employer if they are reasonable.' 71 C.J. p. 780.

The law is well-settled on this point. Having notice of respondent's injury, appellants failed to object when he indicated he intended to see Dr. Meirink. Aware of the imminent surgery, they failed to take any action or advise respondent of their choice of medical care. At no time did they tell respondent that they would ultimately refuse to pay the medical bills. The bills being reasonable, appellants are liable for them.

■ Appellants charge that the Commission acted in excess of its powers and contrary to the facts and in an arbitrary and capricious manner when it doubled the entire temporary award as a penalty.

The June 13, 1973 temporary award instructed appellants to pay medical bills or reimburse respondent for medical bills totaling $2,267.30 incurred as a result of the injury sustained in the accident. They were also ordered to pay all future necessary medical expenses.

Appellants paid $7,000 in temporary total disability benefits between the time of the initial award and the date of the second hearing on respondent's continued disability, but they refused to pay the medical expenses. At the hearing on continued disability on June 19, 1974, respondent made a motion to double the temporary award for failure of the appellants to pay the medical bills, citing as authority § 287.510, RSMo 1969. The referee directed the appellants to make the payments. They refused claiming they were not responsible.

The final award of September 26, 1974 included the sum of $9,267.30 to be paid as a penalty for the appellants' failure to pay the temporary award of medical expenses.

Section 287.510, RSMo 1969 provides in relation to temporary awards: "[I]f the same be not complied with, the amount thereof may be doubled in the final award, if the final award shall be in accordance with the temporary or partial award."

"It is our view that the question of assessing the penalty is a matter that is discretionary with the Commission. We should not interfere unless it clearly appears that the action of the Commission was arbitrary and constituted an abuse of that discretion." *Cebak v. John Nooter Boiler Works Co.*, 258 S.W.2d 262, 266 (Mo. App.1953); Accord, *Powers v. Universal Atlas Cement Co.*, 261 S.W.2d 512 (Mo.App. 1953).

Appellants were liable for these medical bills yet they refused to pay them. As the *Cebak* court noted, at page 266: "The statute must have been enacted in order to encourage the payment of compensation during the interim between the temporary and final awards." If the encouragement is to be effective, the Commission must have discretion to penalize noncompliance.

Appellants argue that because they paid the $7,000 in disability benefits under the temporary award, that amount should not have been included in the penalty. Unfortunately for appellants, the statute speaks of a doubling of the entire temporary award, not just the unpaid portion. Their argument that a doubling of the whole award will encourage failure to pay the entire amount when only a portion is objected to has merit, but it should be directed to the legislature. The statute as written allows for the doubling of the entire award. However, it does not condition the penalty on failure to pay the entire award but upon failure to comply. Appellants failed to comply by refusing to pay the medical bills.

In this case, the conduct of the appellants was such as to cause the referee to find "a certain callous attitude and general ignoring of the welfare of the employee." Their delaying tactics and the nature of the objections to the claim for compensation and request for written statements support that finding. The final award was in accordance with the temporary award as required by the statute. Under these circumstances, a doubling of the award as a penalty for failure to comply with its terms is not an abuse of discretion.

Finally, appellants assert that the Commission erred in finding no change in respondent's disability status, arguing that his return to work negated a finding of continued total disability.

Between September 24, 1974 and October 25, 1974, respondent drove during round trips between St. Louis and Omaha, Indianapolis, Columbus, Cincinnati and Terre Haute. This attempt to resume his employment occurred after he was hospitalized for cortisone shots in the spine in an attempt to relieve his pain. The procedure was temporarily successful but after a couple of weeks of driving the problems with his back and legs reappeared.

Again, in 1975 he attempted to go back to work. Between September 17 and 20, respondent made three trips to Indianapolis. Again, the condition of his back prevented him from continuing to work.

At a hearing on October 21 and 23, 1975, respondent's doctor testified that there had been a slight improvement in respondent's health but that there were physical objective findings indicating disability. The appellants' own doctor testified that from the respondent's history, examination and x-rays his condition remained "essentially the same."

The burden of proof is on the employer to show the employee's condition has changed. *Tabacchi v. Garavelli*, 52 S.W.2d 567 (Mo.App.1932); *Hassell v. C. J. Reineke Lumber Co.*, 54 S.W.2d 758, 760 (Mo.App. 1932). These cases concern attempts by employees to prove changed conditions but the same burden of proof principle applies as to employers.

The testimony of respondent and the medical experts clearly established no change in condition. When, at his own initiative, respondent tried to return to work, his back condition forced him to abandon the effort. The evidence supported a finding of continued and total disability. There was no substantial evidence showing a change in condition justifying the amendment of the award.

Respondent has asked for damages for a frivolous appeal as authorized by Rule 84.19, citing *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50 (Mo.App. 1975). The test is one of good faith. *Brooks, supra.* Appellants' conduct throughout the appeal, particularly in their refusal to pay the medical expenses and in delaying the temporary total compensation for approximately a year after the accident was anything but exemplary.

However, the date discrepancy gave rise to a point which was debatable. In retrospect appellants' reliance on the erroneous date in taking some of the actions they did was not justified, but in the initial stages of the proceedings the error in the date may have seemed more important and less a technicality than a substantive defense. As far as we can determine, there are no Missouri cases which might have served them as a guide.

The appeal here is not so devoid of merit as to make the conclusion inevitable that it was not taken in good faith. We do not consider it frivolous and decline to award damages.

Judgment affirmed.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.