Gary BLACKWELL,
Employee/Respondent,

v.

PURITAN–BENNETT CORPORATION
and Hartford Insurance Company,
Employer/Insurer/Appellants.

No. 66574.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 31, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied
July 25, 1995.

Susan M. Kelly, St. Louis, for appellants.

Charles R. Scanlon, Belleville, for respondent.

CARL R. GAERTNER, Judge.

The employer, Puritan–Bennett Corporation, appeals from the decision of the Labor and Industrial Relations Commission. The Commission entered an award of 20 percent permanent partial disability, 23⁴⁄₇ weeks of temporary total disability and $24,593.88 for past medical expenses in favor of the employee, Gary Blackwell. We affirm in part and reverse in part.

Blackwell testified to the following facts. On April 30, 1990, he was working at Puritan–Bennett. When he lifted a box, he felt a twinge in his back. Blackwell was working alone at the time of the incident. He did not think the injury was serious and so he did not tell anyone at work. The next day, Blackwell told his supervisor. Blackwell was referred to Terry Chandler, who was in charge of human resources at Puritan–Bennett. Chandler told Blackwell to see Dr. Prusaczyk.

While he treated with Dr. Prusaczyk, Blackwell continued to work at Puritan–Bennett under lifting restrictions. But after a

couple of visits, Dr. Prusaczyk released Blackwell to return to work without restriction. Blackwell never returned to work, and he never contacted anyone at Puritan–Bennett about his decision not to return. Blackwell testified that he could not think of a reason why he did not contact Puritan–Bennett. After finishing the medication which Dr. Prusaczyk had prescribed, Blackwell went to Dr. Hoffman, a chiropractor of Blackwell's own choosing. Blackwell never contacted anyone at Puritan–Bennett about seeing Dr. Hoffman. Blackwell testified, in his initial conversation with Terry Chandler, he told her he would also see a chiropractor and she had said that was fine.

Dr. Hoffman treated Blackwell and then referred him to Dr. Routsong, a neurosurgeon. Dr. Routsong advised Blackwell to have surgery on his back. Toward the end of July 1990, Blackwell underwent surgery. Dr. Routsong continued treating Blackwell. On October 19, 1990, Dr. Routsong released Blackwell to return to work with some restrictions. Blackwell began searching for employment and eventually obtained a different job in January of 1991.

Blackwell filed a claim for workers' compensation against Puritan–Bennett. At the hearing, Dr. Joseph Morrow testified by deposition on Blackwell's behalf. Dr. Morrow believed Blackwell was 35 percent permanently partially disabled. Dr. Marc Weise testified on behalf of Puritan–Bennett. He thought Blackwell was 10 percent permanently partially disabled. And based on the history Blackwell gave him, he believed this disability was a result of Blackwell's work accident. Gary Burgstead, a former employee of Puritan–Bennett, also testified at the hearing. His testimony was heard subject to a ruling about its admissibility. Burgstead testified that one morning he asked Blackwell if he actually hurt his back at work. Burgstead claimed Blackwell responded that he had not hurt his back at work but "they don't know that."

At the time, Burgstead did not tell any one else at Puritan–Bennett about this conversation. Sometime after that, Burgstead was placed on the safety committee. His supervisor on that committee remarked that 70 percent of all work related injuries occur before nine o'clock in the morning. Burgstead said this was probably due to the fact that half of those injuries do not actually occur at work. His supervisor asked Burgstead why he believed such accidents did not really occur at work, and Burgstead related the conversation he had with Blackwell. Five months prior to the hearing, Burgstead was contacted by someone at Hartford Insurance Company, Puritan–Bennett's insurer. Burgstead then gave a tape-recorded account of the incident.

Several months prior to the hearing, Blackwell's attorney requested a copy of any statements made by Blackwell which the employer possessed. Burgstead's statement regarding his conversation with Blackwell was never turned over to Blackwell's attorney.

The administrative law judge ruled that Burgstead's testimony was inadmissible. The ALJ found that the employer/insurer was required to produce a copy of Burgstead's recorded statement. However, the judge also determined that Blackwell was not injured at work. The judge listed a host of contradictions, inconsistencies and changes within Blackwell's testimony. The judge found Blackwell's testimony lacked credibility, ruled in favor of Puritan–Bennett and found all other issues moot.

Blackwell appealed to the Commission. The Commission agreed with the ALJ that Burgstead's testimony was inadmissible. However, the Commission found Blackwell's testimony to be credible. Therefore, the Commission determined that Blackwell's injury arose out of the course of his employment with Puritan–Bennett. Furthermore, the Commission ordered Puritan–Bennett to pay Blackwell's past medical bills, including bills related to Dr. Hoffman and Dr. Routsong's treatments. Puritan–Bennett appealed and now raises three points of alleged error.

■ Appellate review of a workers' compensation award is governed by § 287.495 RSMo.1994. The Commission's decision may be set aside only if there is no substantial and competent evidence to support it or if it is clearly contrary to the overwhelming

weight of the evidence. *Massey v. Missouri Butcher & Cafe Supply,* 890 S.W.2d 761, 763 (Mo.App.1995).

## I

■ Puritan–Bennett's first allegation of error is the Commission's refusal of Gary Burgstead's testimony. Burgstead testified to a statement made by Blackwell. Burgstead's recollection of the statement made by Blackwell was recorded by Puritan–Bennett's insurer. Even though Blackwell's attorney requested a copy of this statement, it was never produced. Both the ALJ and the Commission disallowed Burgstead's testimony because of the mandate contained in § 287.215 RSMo.1994. That statute provides:

No statement in writing made or given by an injured employee, whether taken and transcribed by a stenographer, signed or unsigned by the injured employee, or any statement which is mechanically or electronically recorded, or taken in writing by another person, *or otherwise preserved,* shall be admissible in evidence, used or referred to in any manner at any hearing or action to recover benefits under this law unless a copy thereof is given or furnished the employee, or his dependents in case of death, or their attorney, within fifteen days after a written request for it by the injured employee, his dependents in case of death, or by their attorney. (emphasis added)

Puritan–Bennett argues that the statute is inapplicable in this situation. Puritan–Bennett points out that its insurer possessed a recorded statement made by Burgstead, not the claimant. The statute does not require the employer to provide copies of recorded statements of mere witnesses. Puritan–Bennett maintains Blackwell's actual statement was never recorded.

■ The distinctions drawn by Puritan–Bennett ignore one important fact. Puritan–Bennett's insurer possessed a statement of the employee, albeit one preserved by recording Gary Burgstead. The language of the statute is very broad. *See Clare v. Wilson Freight, Inc.,* 748 S.W.2d 740, 742 (Mo. App.1988). It does not distinguish between the many ways a statement is made, nor does it distinguish between the manners in which it might be preserved. As Blackwell points out, if Puritan–Bennett's construction of the statute prevailed, an employer could avoid the dictates of the statute simply by having one of its agents take a claimant's statement and then relate it to another agent, who would then transcribe it or otherwise preserve it.

Our decision in *Hendricks v. Motor Freight Corp.,* 570 S.W.2d 702 (Mo.App. 1978), is similar. In *Hendricks,* the Commission did not allow the testimony of an Illinois state trooper. The employee made statements to the trooper regarding the accident which formed the basis of the claim. The trooper transcribed the statements. The employer failed to furnish these documents within the time allowed by the statute. We ruled that the Commission properly denied the admission of the statements and the trooper's testimony. *Hendricks* at 708.

Puritan–Bennett makes note of factual differences between *Hendricks* and the present case. However, the principle remains the same. It does not matter whether the employer takes and preserves the claimant's statement. If the employer is in possession of a claimant's statement, it must furnish the statement upon request within the time allowed by the statute. Puritan–Bennett failed to do so. The ALJ and the Commission properly denied Burgstead's testimony.

## II

■ In its second point on appeal, Puritan–Bennett challenges the award of past medical expenses. The Commission awarded Blackwell an amount equal to the medical expenses he incurred when he was treated by Dr. Hoffman and Dr. Routsong. Blackwell, himself, chose Dr. Hoffman and Dr. Routsong.

§ 287.140 RSMo.1994 provides:

In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve

from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.

The intent of the statute is obvious. An employer is charged with the duty of providing the injured employee with medical care, but the employer is given control over the selection of a medical provider. It is only when the employer fails to do so that the employee is free to pick his own provider and assess those costs against his employer. Therefore, the employer is held liable for medical treatment procured by the employee only when the employer has notice that the employee needs treatment, or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails to provide the needed treatment. *Hawkins v. Emerson Electric Co.*, 676 S.W.2d 872, 880 (Mo.App.1984).

██ There is no evidence to support an award for medical expenses incurred by the treatment with Dr. Routsong. Dr. Hoffman's fees are supported by Blackwell's testimony. Blackwell claimed that he had authorization to select his own chiropractor. No evidence refutes this claim. However, the employer never authorized any treatments by Dr. Routsong. In fact, the employer was never notified that Blackwell was still in need of medical treatment. Dr. Prusaczyk, the doctor chosen by the employer, had released Blackwell to return back to work without restriction. Blackwell never returned to work, and he never contacted anyone at Puritan–Bennett about his decision not to return. Blackwell never contacted anyone at Puritan–Bennett about seeing Dr. Hoffman, except for the initial authorization he received to choose his own chiropractor. As far as Puritan–Bennett was aware, Blackwell was not in need of any further medical attention. He had been released to return to work without restriction, and he simply never returned to work. It was during this time frame that Blackwell treated with Dr. Routsong.

1. Of course, the statute in effect today differs from the one which controlled the decision in *Moore*. However, the operative language is re-

The claimant in *Moore v. International Shoe Co.*, 213 S.W.2d 215 (Mo.App.1948), also chose to treat with her own physician. The claimant was sent to two doctors by her employer. She also went to her own doctor. *Moore*, 213 S.W.2d at 220. The Commission's award included the medical expenses incurred from treatment with her own doctor because the medical aid was necessary and not furnished by the employer. *Moore* at 220. This court reversed that award, stating:

> Whatever services [claimant's doctor] rendered were at the instance and request of the employee without any notice whatever to the employer or any request made to the employer to furnish such further medical treatment, or any order of the Commission that such further treatment was necessary or should be furnished. Under these circumstances such allowance was improper.[1]

Dr. Routsong's services were rendered at Blackwell's request without any notice to Puritan–Bennett or any request to Puritan–Bennett for further medical treatment. Consequently, Puritan–Bennett is under no responsibility to cover these services. That portion of the Commission's award regarding Dr. Routsong's expenses must be reversed.

III

In its final point, Puritan–Bennett challenges the Commission's finding on the claimant's credibility. The Commission found Blackwell's testimony to be credible, even though the ALJ who heard Blackwell's testimony rendered his decision based on the lack of that testimony's credibility. Furthermore, Blackwell's testimony was the sole evidence that Blackwell was hurt in the course of employment.

██ Puritan–Bennett acknowledges the often cited rule regarding findings on witness credibility. The Commission is the sole judge of the credibility of witnesses and the weight and value to give to the evidence. *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 67 (Mo.App.1990). However, Pu-

markably similar, and any differences are of no consequence. *See* Mo.R.S.A. § 3701(a) (1939).

ritan–Bennett contends this rule ignores the actual function of the Commission. The Commission does not actually hear witnesses; it reviews the decision of an ALJ.

■ As set forth above, our review of an award by the Commission is very limited. It does not extend to issues of witness credibility. Puritan–Bennett acknowledges that our standard of review does not allow this court to make its own determination of a witness' credibility. And since the workers' compensation law does not direct the Commission to defer to the ALJ's findings on credibility, the Commission is the final judge of a witness' credibility. However, Puritan–Bennett argues that the rule is somewhat ludicrous; the ALJ who actually heard the witness testify is in a much better position to ascertain the trustworthiness of such testimony. Puritan–Bennett maintains it is an accident of history that the Commission is not required to defer to the ALJ's findings on credibility.

In Missouri, the Workmen's Compensation Act first went into effect on November 2, 1926. *Warren v. American Car & Foundry Co.*, 327 Mo. 755, 38 S.W.2d 718, 721 (Mo. banc 1931). The first Commission was appointed on November 15, 1926. *Warren,* 38 S.W.2d at 721. As originally enacted, the worker's compensation laws directed the Commission, or one of its members, to hear the dispute between claimant and employer. *See* §§ 13672a39 and 13672a40 RSMo. (Mo. Sup.1927). Consequently, the Commission was the sole arbiter of a witness' credibility. After all, the Commission, or one of its members, actually viewed the witness' live testimony. Appropriately, this court's powers of review were limited in exactly the same manner that they are today. *See* § 13672a43 RSMo. (Mo.Sup.1927).

The first major amendment to the workers' compensation laws was the addition of referees, the precursor to today's ALJs. That amendment was adopted in 1929. § 3357 RSMo.1929. The amendment was necessary because the large volume of claims being brought could not be properly adjudicated by three commissioners. *The History of Workmen's Compensation Law,* R. Robert Cohn, 15 V.A.M.S.1965. Referees replaced commissioners as the initial fact finders. At the same time, the Commission remained the sole judge of the credibility of witnesses. Even with referees as the initial fact finders, the Commission was still in a suitable position to adjudge the credibility of witnesses. Upon an application for review after a decision by a referee or sole commissioner, the full Commission had the authority to hold a rehearing, in which the Commission could actually view the live testimony of the witnesses. *See* § 3341 RSMo.1929. Therefore, there was no need for the Commission to defer to a referee's determination of credibility. If a dispute turned on a witness' credibility, the Commission could hear the witness and come to its own conclusions. The language of § 3341 RSMo.1929 survives intact in our current workers' compensation law. *See* § 287.480 RSMo.1994.

Puritan–Bennett points out that the Commission, in actuality, has become a reviewing entity. It does not hear the testimony of witnesses and so should defer to the ALJ's determination.

We agree with Puritan–Bennett's analysis. The Commission's role as arbiter of a witness' credibility is a historical accident traced back to the Commission's role when the workers' compensation law was first promulgated. The Commission's role as sole judge of witness credibility offends our traditional notions about the role of a reviewing tribunal. However, any change in the Commission's role cannot come from this court, but must come from the legislature. Under the law currently enacted, the Commission does not have to defer to the ALJ's determination of a witness' credibility.

■ Blackwell's testimony, despite its many inconsistencies and contradictions, constituted competent and substantial evidence that he was injured in the course of employment. The Commission was free to rely on this testimony. Point denied.

The award of the Commission is affirmed in part and reversed and remanded in part. Upon remand, the Commission will modify the award so that the employer is not responsible for any medical bills which resulted

from the claimant's treatment with Dr. Rout-
song.

GRIMM, C.J., and DOWD, J., concur.